UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NOBLE RESOURCES, S.A.

                *Plaintiff,*                     **08 Civ. 3876 (LAP)**

    - against -

YUGTRANZITSERVIS LTD.,
a.k.a. YUGTRANZIT SERVIS LIMITED, and
SILVERSTONE, S.A.,

                *Defendants.*
------------------------------------------------------------X


**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S MOTION TO VACATE
<u>MARITIME ATTACHMENT AND GARNISHMENT</u>**


**CHALOS & CO, P.C.**
123 South Street
Oyster Bay, New York  11771
Tel:  (516) 714-4300
Fax:  (866) 702-4577
E-mail:  <u>gmc@chaloslaw.com</u>

Attorneys for Defendants
YUGTRANZITSERVICE LTD and SILVERSTONE, S.A..

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND ...............................................................1

STATEMENT OF THE ISSUES ........................................................1

POINT I – A HEARING ON THIS APPLICATION SHOULD BE
SET WTHIN THREE (3) COURT DAYS OF ITS FILING...................2

POINT II – THE BURDEN IS ON PLAINTIFF TO SHOW WHY
THE ORDER SHOULD NOT BE VACATED .....................................3

POINT III – PLAINTIFF'S CLAIMS DO NOT FALL WITHIN
THIS COURT'S ADMIRALTY AND MARITIME JURISDICTION .................4

    A.  The Sales Agreement Between Plaintiff and
        Yugtranszitservis Does Not Confer Maritime Jurisdiction
        Upon this Court.....................................................................4

    B.  The Silverstone Guarantee Agreement Does Not Confer
        Maritime Jurisdiction Upon This Court..................................8

POINT IV – THE ORDER OF ATTACHMENT AS AGAINST
SILVERSTONE MUST BE VACATED AS PLAINTIFF'S CLAIMS
ARISING OUT OF THE GUARANTEE ARE NOT RIPE....................9

POINT V – THE COURT DOES NOT PROPERLY HAVE *QUASI IN REM*
JURISDICTION AND THE AMENDED COMPLAINT SHOULD BE
DISMISSED FOR LACK OF PERSONAL JURISDICTION............................11

    A.  Plaintiff has not located any of YUGTRANZITSERVIS's
        property within the district, despite issuance of the Attachment
        Order, and there is no quasi in rem basis for the assertion
        of personal jurisdiction ......................................................11

    B.  Even if Plaintiff did allege some basis for the assertion
        of personal jurisdiction over Defendants, which it did not,
        personal jurisdiction would not exist pursuant to NY CPLR 301 .......13

    C.  Even if Plaintiff did allege a proper basis for the assertion
        of personal jurisdiction over Defendants, which it did not,
        personal jurisdiction would not exist pursuant to NY CPLR 301 .......14

D.  Even if the assertion of personal jurisdiction over Defendants complied with the provisions of NY CPLR § 302, the assertion of jurisdiction would be inconsistent with constitutional requirements................................................................16

CONCLUSION..................................................................................................16

## INTRODUCTION

**COME NOW**, Defendants Yugtranzitservis Ltd. ("YUGTRANZITSERVIS") and

Silverstone, S.A. ("SILVERSTONE"), by and through undersigned counsel and submit this

Memorandum of Law and the accompanying Declarations of George M. Chalos, Esq.,

Oleksandr Shevchuk and Oleg Boldyirev in support of this Motion to Vacate the Court's *ex*

*parte* Orders of Attachment dated April 24, 2008 and June 17, 2008 (Docket Entries #4 and

#8, respectively).  Defendants make this motion pursuant to Rules B and E of the

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure, Local Admiralty Rule E.1, and Fed. R. Civ.P. 12(b)(2) and 12(b)(6).

## FACTUAL BACKGROUND

For the sake of brevity, the salient facts pertaining to the instant Motion to Vacate the

Process of Maritime Attachment and Garnishment and Dismiss the Complaint are more fully

set forth in the accompanying Declarations of George M. Chalos, Esq., Oleksandr Shevchuk

and Oleg Boldyirev.

## STATEMENT OF THE ISSUES

This Court does not have maritime jurisdiction over Plaintiff's claims against

YUGTRANZITSERVIS and SILVERSTONE and therefore does not have jurisdiction to

issue the Ex Parte Orders of Maritime Attachment filed on April 29, 2008 and June 17, 2008

(Docket Entries #4 and #8 respectively).  The dispute between Plaintiff and Defendant,

YUGTRANZITSERVIS, is premised upon a contract for the sale and purchase of 25,000

metric tons (+/– 10% at buyer's option) of Russian Milling Wheat at US $172.00 per metric

ton.  Plaintiff's dispute with SILVERSTONE is premised upon a guarantee agreement of that

same contract.  Neither the sales contract nor the guarantee agreement falls within this

Court's admiralty and maritime jurisdiction, and there is no other basis to assert personal

jurisdiction over the Defendants.

1

Accordingly, and for the reasons more fully set forth below and in the accompanying declarations, Defendants respectfully request that the pending attachments be vacated and Plaintiff's Amended Verified Complaint be dismissed in its entirety.

## POINT I

### A HEARING ON THIS APPLICATION
### SHOULD BE SET WITHIN THREE (3) COURT DAYS OF ITS FILING

To ensure the constitutionality of the attachment mechanism provided for under Rule B, Supplemental Admiralty Rule E(4)(f) and the Local Rules of this Court provide for a prompt adversary hearing following any attachment. Supplemental Admiralty Rule E(4)(f) provides that any person claiming an interest in the attached property is "entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Supp. Rule E(4)(f). The Local Rules of the Southern District of New York provides:

> *The adversary hearing following arrest or attachment of garnishment that is called for in supplemental Rule E(4)(f) shall be conducted within three (3) court days, unless otherwise ordered.*

S.D.N.Y. Local Rule E.1.

This Rule speaks in mandatory terms and is necessary to give a defendant its day in court after a plaintiff has been able to obtain *ex parte* relief, outside the adversary system and with only minimal oversight.[1] Accordingly, Defendants, YUGTRANZITSERVICE and SILVERSTONE, respectfully request that a hearing should be set within three (3) days.

---

[1] The Advisory Committee has stated that at the Rule E(4)(f) hearing, the defendant can attack not only the attachment of funds, but also "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. Rule E(4)(f), advisory committee's note.

## POINT II

## THE BURDEN IS ON PLAINTIFF TO SHOW
## WHY THE ORDER SHOULD NOT BE VACATED

To obtain a maritime attachment, a plaintiff must comply with Supplemental

Admiralty Rule B ("Rule B"), which states in relevant part:

> *If a defendant is not found within the district, . . . a verified*
> *complaint may contain a prayer for process to attach the*
> *defendant's tangible or intangible personal property – up to*
> *the amount sued for – in the hands of garnishees named in the*
> *process . . . The court must review the complaint and affidavit*
> *and, if the conditions of this Rule B appear to exist, enter an*
> *order so stating and authorizing process of attachment and*
> *garnishment.  The clerk may issue supplemental process*
> *enforcing the court's order upon application without further*
> *court order.*

Fed. R. Civ. P. Supp. R. B(1)(a)-(b).

Rule E(4)(f) allows any person whose property has been attached pursuant to Rule B

an opportunity to appear before a district court to contest the attachment.  Rule E(4)(f) states,

in relevant part:

> *Whenever property is arrested or attached, any person*
> *claiming an interest in it shall be entitled to a prompt hearing*
> *at which the plaintiff shall be required to show why the arrest*
> *or attachment should not be vacated or other relief granted*
> *consistent with these rules.*

Fed. R. Civ. P. Supp. R. E(4)(f).

"Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment

was properly ordered and complied with the requirements of Rules B and E." *Aqua Stoli*

*Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 445 n.5 (2d Cir. 2006).

In order to sustain an attachment, a plaintiff <u>must</u> show at the Rule E(4) hearing that

it has fulfilled the "filing and service requirements of Rules B and E" <u>and</u> that "1) it has a

valid prima facie admiralty claim against  the defendant; 2) the defendant cannot be found

3

within the district; 3) the defendant's property may be found within the district; and 4) there

is no statutory or maritime law bar to the attachment." *Aqua Stoli*, 460 F.3d at 445 (footnote

omitted). If a plaintiff fails to demonstrate that it has met *any* of the requirements of Rules B

and E, the district court <u>must</u> vacate the attachment. *Aqua Stoli*, 460 F.3d at 445.

**POINT III**

**PLAINTIFF'S CLAIMS DO NOT FALL WITHIN THIS COURT'S
ADMIRALTY AND MARITIME JURISDICTION**

A maritime attachment pursuant to Supplemental Admiralty Rule B can only be

invoked when a plaintiff makes a prima facie showing that the plaintiff has a valid maritime

claim against the defendant. "The absence of maritime jurisdiction would prove fatal to

plaintiff's attachment." *Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA*, 78 F. Supp.

2d 162, 166 (S.D.N.Y. 1999). In the present case, neither Plaintiff's Verified Complaint

(Docket Entry #1) nor its Amended Verified Complaint (Docket Entry #7) establishes a

maritime cause of action against either Defendant. Consequently, the Orders of Attachment

should be vacated as a matter of law. *Sea Transport Contractors v. Industries Chemiques Du

Senegal*, 411 F. Supl. 2d 386, 392 (S.D.N.Y. 2006) (citation omitted); *see also Winter Storm

Shipping Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002) (which held that in order to support

the issuance of a maritime attachment, "the plaintiff's claim must be one which will support a

finding of admiralty jurisdiction under 28 U.S.C. § 1333") (citation omitted).

**A.      *The Sales Agreement Between Plaintiff and Yugtranzitservis Does Not Confer
Maritime Jurisdiction Upon This Court.***

The United States Supreme Court has held that it is difficult to clearly delineate the

boundaries of maritime contract jurisdiction as the determination is "conceptual" in nature.

*Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 23 (2004). The Second Circuit's

traditional test for whether a contract would support a finding of admiralty jurisdiction has

been whether the subject matter "relate[s] to the navigation, business, or commerce of the

4

sea." *Sirius Ins. Co. (UK) Ltd. v. Collins,* 16 F.3d 34, 36 (2d Cir. 1994) (citations omitted). The Supreme Court has recognized that courts must make a case by case determination as to maritime jurisdiction over contracts. *Exxon Corp. v. Central Gulf Lines, Inc.* 500 U.S. 603, 612 (1991). When assessing admiralty contract jurisdiction, "the general rule is that admiralty jurisdiction arises only when the subject-matter of the contract is 'purely' or 'wholly maritime in nature.'" *Transatlantic Marine Claims Agency Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 109 (2d Cir. 1997) (citing *In re The Steamer Eclipse,* 135 U.S. 599, 608 (1890)). There are two (2) exceptions to that general rule.

One exception is that admiralty jurisdiction can be exercised "where non-maritime elements of a contract are 'merely incidental' to the maritime ones." *Folksamerica Reinsurance v. Clean Water of NY, Inc.,* 413 F.3d 307, 314 (2d Cir. 2005). The other exception relates to situations where a "mixed" contract exists, i.e., a contract that contains both admiralty and non-admiralty obligations. In such a circumstance, admiralty jurisdiction can be found only if the claim arises from a breach of the maritime provisions that are severable from the non-maritime provisions of the contract. *Id.* However, a *"mixed"* contract is usually not within admiralty jurisdiction. *Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA,* 78 F. Supl. 2d 162, 170 (S.D.N.Y. 1999).

In this case, neither circumstance is applicable. There is no maritime contract to which Plaintiff is a party. Neither Defendant was or is a party to the charter party contracts which Plaintiff apparently concluded with third parties in order to transport the wheat which was the subject of the sales contract. The sales contract is not a maritime contract. Its primary objective was the sale of goods, not their transportation by sea. The idea that a contract becomes a subject to "maritime" jurisdiction simply because there is a sale of goods which are to be transported by sea has been consistently rejected. *Lucky-Goldstar Int'l (America) Inc. v. Phibro Energy International, Ltd.,* 958 F.2d 58, 59-60 (5th Cir. 1992) (No

maritime jurisdiction existed because "a principal purpose of the contract was the sale of over

a thousand metric tons of toluene" and "[i]t is well-established that such a sale of goods by

itself would not be "maritime" merely because the seller agrees to ship the goods by sea to

the buyer.); *Armour & Co. v. Fort Morgan Steamship Co.*, 270 U.S. 253, 259, 1926 AMC

327, 331 (1926); *Luckenbach S.S. Co. v. Gano Moore Co.*, 298 Fed. 343, 344, 1923 AMC

1229 (2d Cir. 1923) (L.Hand, J.), *rev'd in part on other grounds*, 1924 AMC 841, 298 Fed.

344 (2d Cir. 1924) ("Nor is it possible to treat a contract of sale as maritime even though its

performance involves the carriage of goods on the seas to the place of delivery. . . . In such

matters, the whole contract must be maritime in its character, and, when the performance is

partly maritime and partly terrene, a court of admiralty will not assume jurisdiction over it,

unless the nonmaritime features be inconsiderable"). The undisputed principal purpose of the

contract upon which Plaintiff has based its claim was the <u>sale and purchase</u> of 25,000 metric

tons (+/– 10% at buyer's option) of Russian Milling Wheat. This sales contract is not a

maritime contract within the meaning of Rule B.

The issue of whether the breach of a sales contract would support a Rule B

attachment has been recently addressed by several Judges sitting within the Southern District

of New York.

In *Aston Agro-Industrial AG v. Star Grain*, 2006 U.S. Dist. LEXIS 91636

(S.D.N.Y.)(Daniels, J.), the court held that the contract for the sale of Russian wheat which

was very similar to the contract at issue in the present case would not support maritime

jurisdiction and therefore could not support a Rule B attachment. The *Aston* plaintiff was

attempting to satisfy a GAFTA arbitration award for unpaid demurrage. In finding that the

<u>sale and purchase</u> contract was not maritime, Judge Daniels held:

> *In this case, the contracts are not maritime contracts because
> their primary objective was not the transportation of goods by
> sea. Instead, their primary objective was, undoubtedly (sic.),*

> *the sale of wheat. That the wheat was transported on a ship does not make the contracts maritime contracts any more than it would make them aviation contracts had the wheat been shipping via airplane. Nor were they contracts between a seller and a shipping. In fact, Aston entered into two separate charter parties to accomplish the shipment of the wheat, and it was the primary maritime objective of those contracts to transport the wheat by sea. Thus, the charter parties between the seller and the shipper, like the bills of lading in Kirby, are maritime contracts, see, e.g. Asoma Corp. v. SK Shipping Co., 467 F.3d 817, 2006 WL 3017982 \*5 (2d Cir. 2006) ("Charter parties and bills of lading are interpreted using the ordinary principles of maritime contract law."). The contracts for the sale of wheat are not.*

In a decision also interpreting a similar contract, Judge Lynch found no maritime jurisdiction over a claim for the non-delivery of iron ore shipped from India to China in *Shanghai Sinom Import & Export v. Exfin (India)*, 2006 AMC 2950, 2951-2952 (S.D.N.Y.):

> *Suffice to say, that plaintiff has sued because it did not receive the goods, or all of them, in a timely manner, and it seeks various items of damages for such nondelivery.*
>
> *On this record, both common sense and long-established case law suggest that this is a nonmaritime dispute between a purchaser and seller over the alleged failure to deliver purchased goods. I note that the dispute has no connection to the United States whatsoever, and there is apparently no basis for in personam jurisdiction over the defendant in this court or for subject matter jurisdiction in the federal courts on any nonadmiralty basis. This case is only here because of the liberal provisions for attachment and in rem jurisdiction in admiralty cases.*
>
> *          \*          \*          \*          \**
>
> *What we have here is a contract of the sort perfectly familiar long before the advent of container ships and integrated transportation systems. The purchase of goods by a buyer in one country from a seller in another, with a proviso that the goods are to be sent by sea, and with some incidental provisions bearing on the nature of that shipment, the alleged breach here was a breach wholly of the sale of goods provisions of the contract, not of its incidental maritime aspects, or indeed, of any transportation aspect at all. There is thus no basis in this case for maritime jurisdiction.*

Most recently, Judge Crotty vacated an order of attachment on the basis that the underlying <u>sales</u> contract did not give rise to a maritime claim. *Tangshan Shiajichenhui Iron & Steel v. Lords Polymer PVT Ltd., et al. 08-Civ-3576, Docket Entry # 15.*

Just like the contracts involved in *Aston Agro-Industrial, Shanghai Sinom* and *Tangshan,* there is nothing particularly maritime about the claims being asserted by the Plaintiff against these defendants. The claim is nothing more than an alleged breach of a contract to sell Russian Milling Wheat and an indemnity agreement relating to the same contract. There is no basis to find that either claim is cognizable within the Court's admiralty and maritime jurisdiction and therefore, cannot form the basis of a valid maritime attachment.

**B.**    ***The Silverstone Guarantee Agreement Does Not Confer Maritime Jurisdiction Upon This Court***

SILVERSTONE undisputedly agreed to "irrevocably and unconditionally" guarantee YUGTRANZITSERVIS's obligations under the "sale/purchase contract 200704147 dated 13.04.07." Courts have routinely held that agreements to guarantee liabilities are <u>not</u> within the definition of maritime contracts and otherwise outside the threshold of "maritime claims." *Deval Denizcilik Ve Tigaret A.S. v. Agenzia Tripcovich S.R.L and Banca Popolare di Milano,* 513 F. Supp. 2d 6 (S.D.N.Y. 2007); *see also, Fednav, Ltd. v. Isoramar, S.A.,* 925 F.2d 599, 601 (2d Cir. 1991) (agreement to act as surety for another's breach of charter party is non-maritime); *Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co.,* 151 F. 440, 444 (7th Cir. 1907) ("The money liability is assumed in a new contract, under a new form and by a new party, and is thus equally distinguishable from the original maritime contract."); *see also Black Sea State Steamship Line v. Associate of International Trade District 1 Inc.,* 95 F.Supp. 180 (S.D.N.Y. 1951) ("contract of indemnity" not within the admiralty jurisdiction). This is because:

> *the direct subject-matter of the suit is the covenant to pay*
> *such damages, which neither involves maritime services nor*
> *maritime transactions; and . . . the mere fact that the event*
> *and measure of liability are referable to the charter party*
> *does not make the [agreement to pay] a maritime contract,*
> *nor make its obligation maritime in a jurisdictional sense.*

*Deval Denazcilik* at 9, citing *Fednav, Ltd.* at 601.

Plaintiff, itself, acknowledges in its Verified Amended Complaint that
SILVERTSTONE merely agreed to guarantee YUGTRANZITSERVIS' "performance of the
contract." *See* Amended Verified Complaint at ¶ 8.

Accordingly, Defendants respectfully request that the pending Ex Parte Order of
Attachment be vacated and the Amended Complaint be dismissed, *as a matter of law,* in its
entirety, as Plaintiff has failed to plead a *prima facie* maritime claim against either
Defendant.

**POINT IV**

**THE ORDER OF ATTACHMENT AS AGAINST SILVERSTONE MUST BE
VACATED AS PLAINTIFF'S CLAIMS ARISING OUT OF THE
GUARANTEE ARE NOT RIPE**

Assuming, *arguendo,* that the Court does not vacate the pending attachment on the
basis of the arguments stated above, there can be no dispute that the underlying sale and
purchase contract between Plaintiff and YUGTRANZITSERVIS provides for resolution of
disputes by way of GAFTA arbitration. *See* Amended Verified Complaint, at para. 14.
Plaintiff's claim against SILVERSTONE is a strictly contingent claim subject to several
conditions precedent; none of which have been met.

As an initial matter, Plaintiff must first obtain and sustain a successful final GAFTA
arbitration award, which it has yet to do. As stated in the accompanying Boldyirev
Declaration, the preliminary award is being appealed. Thereafter, Plaintiff must obtain a
finding that YUGTRANZITSERVIS has failed to perform its obligations. It is then, and only

then, that Plaintiff's right to seek performance on the SILVERSTONE guarantee will become ripe. *Tamman v. Schinazi,* 2004 U.S. Dist. LEXIS 13896 (S.D.N.Y. 2004) (liability premised upon the theory that defendant agreed to act as a guarantor is obviously contingent upon the establishment of the underlying obligation).

Moreover, the nature and substance of Plaintiff's claim against SILVERSTONE are analogous to the Rule B attachment cases which address contingent claims. In the Second Circuit, courts "have not been receptive to contingent [indemnity] claims as bases for maritime arrests for attachments." *Sonito Shipping Company Ltd. v. Sun United Maritime Ltd.,* 478 F.Supp.2d 532, 540 (S.D.N.Y. 2007) citing *Greenwich Marine, Inc. v. S.S. Alexandria,* 339 F.2d 901 (2d Cir. 1965).

In *Greenwich Marine, Inc. v. S.S. Alexandra,* after the cargo interests asserted a claim for damage, the charterers commenced an action for indemnity against the shipowner and seized the vessel. The district court dismissed the action on the ground that the action "based on this indemnity claim did not state any cause of action justifiable in admiralty but instead was entirely speculative and hypothetical." *Id.* at 903. On appeal, the Second Circuit defined the question as "whether Greenwich's libel stated a good 'cause of action' in admiralty against the Alexandra and Fidelity, thereby entitling it to have the U.S. Marshal seize the Alexandra." *Id.* at 904. The Court of Appeals concluded that "the district court properly held that this claim was premature," no judgment having been entered against the charterer for the cargo damage and no suit having been instituted against it. *Id.* at 905.

More recently, a number of district judges of this Court have vacated maritime attachments based upon comparable claims for contingent indemnity. See, e.g., *J.K. Int'l, Pty., Ltd. v. Agriko S.A.S,* No. 06 Civ. 13259, 2007 AMC 783, 2007 WL 485435 (S.D.N.Y. Feb. 13, 2007) (Karas, J.), ("Plaintiff's claims against defendant are therefore for indemnity

only, and Plaintiff must show that its indemnity claim is ripe"; in absence of evidence that shipowner intended to press a demurrage claim against charterer, charterer's claim for contingent indemnity against cargo receivers "is simply too thin a reed to rest on when Plaintiff carries the burden of defending the Attachment"); *Bottiglieri di Navigazione SPA v. Tradeline LLC,* No. 06 Civ. 3705, 472 F. Supp. 2d 588, 2007 U.S. Dist. LEXIS 8278, 2007 WL 404657 (S.D.N.Y. Feb. 6, 2007) (Kaplan, J.), at *2 (where back-to-back charter parties required that contract disputes be arbitrated in London under English law, shipowner had settled cargo receivers' claim for damages, and shipowner had announced its intention to seek to recover that payment from the head charterer in arbitration, head charterer's claim for contingent indemnity against sub-charterer could not sustain a maritime attachment of the sub-charterer's property; "[t]his claim for indemnity is not ripe under English law. Plaintiff thus has not established the 'valid prima facie admiralty claim' required under Aqua Stoli.").

Accordingly, as Plaintiff's claims arising out of the guarantee issued by SILVERSTONE are not ripe, it is respectfully requested that the Court vacate the pending Ex Parte Order of Attachment and dismiss the Amended Complaint as against SILVERSTONE *as a matter of law.*

## POINT V

### THE COURT DOES NOT PROPERLY HAVE *QUASI IN REM* JURISDICTION AND THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

A.   *Plaintiff has not located any of YUGTRANZITSERVIS's property within the district, despite issuance of the Attachment Order, and there is no quasi in rem basis for the assertion of personal jurisdiction.*

"Through attachment of a defendant's property in the district, a maritime or admiralty court gains jurisdiction over the defendant's person, and the plaintiff can gain a judgment against the defendant up to the value of the property attached." *Blueye Navigation, Inc. v.*

*Oltenia Navigation, Inc.,* No. 94 Civ. 1500, 1995 U.S. Dist. LEXIS 1844, AT *9 (S.D.N.Y.

Feb. 15, 1995) (Preska, J.). "Because jurisdiction over the person is gained only through the

attached property, courts have recognized that Rule B jurisdiction properly is characterized as

*quasi in rem."* *Id.* At *10.

Where none of a defendant's property can be located within the district, as in the

instant matter, "Rule B attachment is not possible." *Limonium Maritime, S.A., v. Mizushima*

*Marinera S.A.,* 961 F. Supp. 600, 608 (S.D.N.Y. 1997) (Chin, J.); *Blueye Navigation, Inc.*

1995 U.S. Dist. LEXIS 1844, at *19. In *Blueye Navigation,* the court, as it did here, had

"signed an Order directing the Clerk of the Court to issue writs of maritime attachment . . .

[which] writs were served on various banks in the Southern District that purportedly held

assets belonging to [the] defendants, [but] no such assets were located." *Id.* At *7. The

*Blueye Navigation* Court held that if "no property was attached . . . then no jurisdiction was

ever obtained under *Supplemental Rule B."* *Id.* At *15. The *Blueye Navigation* Court held

that the plaintiffs had "failed to meet the final, and most basic, requirement of Rule B

attachment – they [had] been unable to locate any property of [the] defendant in this district

to attach." *Id.* at *13. Thus, Plaintiff's failure to locate any of a defendant's property makes a

Rule B attachment completely ineffective for the establishment of *quasi in rem* jurisdiction.

As the *Blueye Navigation* Court stated, "[t]he caselaw, the authorities, and basic logic

demonstrate that no *quasi in rem* jurisdiction under Rule B can exist without some *res* to be

attached." *Id.*

Where a plaintiff fails to establish *quasi in rem* jurisdiction through attachment of a

defendant's assets pursuant to Rule B <u>and</u> there are no other bases for jurisdiction, as is the

case here, the matter should be dismissed for lack of personal jurisdiction. In *Deiulemar*

*Compagnia Di Navigazione,* the court held that the "Order of Attachment should . . . be

vacated [and] because the attachment [was] the only basis for the assertion of jurisdiction over [the defendant], its vacatur [required] the dismissal of the action . . . for lack of personal jurisdiction." *Deiulemar Compagnia Di Navigazione SpA v. Dabkomar Bulk Carriers Ltd.,* No. 05 Civ. 8199, 2005 U.S. Dist. LEXIS 40783, at *27 (S.D.N.Y. Dec. 12, 2005) (Pitman, Mag.) (recommendation adopted by *Deiulemar Compagnia di Navigazione SpA v. Dabkomar Bulk Carriers Ltd.,* 2006 U.S. Dist LEXIS 8331, at *10 (S.D.N.Y. Feb. 10, 2006) (Berman, J.) (stating "[t]he Court adopts the Report in all material respects, and for the reasons stated herein and therein . . . dismisses . . . for lack of personal jurisdiction"). Likewise, the *Blueye Navigation* Court reached the same conclusion, ruling that absent *quasi in rem* jurisdiction or the allegation of other bases for personal jurisdiction, the plaintiff's "actions must be dismissed." *Blueye Navigation, Inc.,* 1995 U.S. Dist. LEXIS 1844, at *9.[2]

As Plaintiff has not alleged any other bases upon which the Court might assert personal jurisdiction over Defendants; Defendants do not have any jurisdictionally significant contacts with the State of New York; and Plaintiff's claim has nothing to do with New York, Defendants respectfully submit that this Honorable Court lacks personal jurisdiction over Defendants.

> **B.      *Even if Plaintiff did allege some basis for the assertion of personal jurisdiction over Defendants, which it did not, personal jurisdiction would not exist pursuant to NY CLPR 301.***

Jurisdiction over Defendants cannot be established pursuant to CPLR § 301 which provides that New York courts "may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." The provision allows New York courts to

---

[2] Additionally, where a plaintiff seeks to obtain a maritime attachment pursuant to Rule B, the rule's pleading requirements, which require a plaintiff to allege that a defendant is "*not* present in the district," would generally demonstrate that the defendant is not subject to personal jurisdiction pursuant to any grounds other than *quasi in rem*. *See, Blueye Navigation, Inc.,* 1995 U.S. Dist. LEXIS 1844, at *17-18 (describing *East Asiatic Co. v. Indomar, Ltd.* 422 F. Supp. 1335, 1339-40 (S.D.N.Y. 1976) as standing for the proposition that "there cannot logically be a simultaneous allegation of jurisdiction under both maritime attachment under Rule B and through traditional means – the two methods are mutually exclusive.")

apply the traditional standard for personal jurisdiction, pursuant to which courts may exercise jurisdiction over foreign corporations that are present in the forum actually or constructively through pervasive contacts. *Sedig v. Okemo Mountain,* 612 N.Y.S.2d 643, 644 (2d Dept. 1994) ("Jurisdiction under *CLPR 301* may be acquired over a foreign corporation only if that corporation does business here 'not occasionally or casually, but with a fair measure of permanence and continuity' so as to warrant a finding of its 'presence' in this jurisdiction"). Defendants are foreign companies that have never been a resident or domicile of the State of New York. *See* (Shevchuk Declaration and Boldyirev Declaration). Moreover, neither have been licensed or authorized to do business in the State of New York; neither transact any business in the State of New York; neither have any customers in the State of New York, and/or otherwise have voluntarily subjected themselves to the jurisdiction of the State of New York. *Id.*

**C.      *Even if Plaintiff did allege a proper basis for the assertion of personal jurisdiction over Defendants, which it did not, personal jurisdiction would not exist pursuant to NY CPLR 302.***

Similarly, Defendants are not subject to jurisdiction under the New York long-arm statute, CPLR § 302(a), both because Defendants lack the type of contact with the forum state that the statute requires and because any assertion of jurisdiction would not comply with constitutional requirements. "To determine whether a non-domiciliary may be sued in New York, we first determine whether our long-arm statute *(CPLR 302)* confers jurisdiction over it in light of its contacts with this State. If the defendants' relationship with New York falls within the terms of *CPLR 302,* we determine whether the exercise of jurisdiction comports with due process." *LaMarca v. Pak-Mor Mfg. Co.,* 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 307 (N.Y. 2000).

Section 302(a) allows New York courts to exercise personal jurisdiction over non-tort and non-family law claims against out-of-state defendants only where the claims arise out of business transacted by the defendant in the State or property owned by the defendant in the State:

> (a) **Acts which are the basis of jurisdiction.** As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> > 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> > \*\*\*\*
> > 4. owns, uses or possesses any real property situated within the state.

CPLR § 302(a).

Here, neither defendant owns, uses, possesses or maintains any bank accounts, plants, warehouses or property of any kind in the State of New York." *See* Shevchuk Declaration and Boldyirev Declaration. Therefore, CPLR 302(a)(4) cannot support the assertion of personal jurisdiction over defendants. Moreover, Plaintiff's claims concern a breach of <u>sale and purchase</u> contract for Russian Milling Wheat in Novorossiysk, Russia. Plaintiff's cause of action does not arise from business transacted by Defendants in New York or in any way relate to the state within the meaning of CPLR 302(a)(1). *Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc.* 10 F Supp. 2d 334, 339 (S.D.N.Y. 1998) ("[i]n order to establish personal jurisdiction under *§ 302(a)(1),* the plaintiff must show (1) that the defendant 'transacts business' within the state, and (2) that the claim 'arises from' that transaction.").

**D.** ***Even if the assertion of personal jurisdiction over Defendant complied with the provisions of NY CPLR § 302, the assertion of jurisdiction would be inconsistent with constitutional requirements.***

Finally, even if personal jurisdiction over Defendants existed pursuant to the New York long-arm statute, Defendants could not be subjected to the personal jurisdiction of this Court because the exercise of such jurisdiction would violate Defendants' due rights under the Constitution. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 124 (2d Cir. 2002) ("If there is a statutory basis for jurisdiction, the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the *Due Process Clause of the Fourteenth Amendment."*). Due process demands that defendants have "certain minimum contacts with [the forum] such that the maintenance of the suite does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, (1945) (internal citation omitted). To have minimum contacts there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 1055 S. Ct 2174, 2183 (1985) (quoting *Hanson v. Denckla,* 357 U.s. 235, 253, 78 S. Ct. 1228, 1240 (1958).

In the instant matter, Defendants clearly have no contacts with the State of New York that might support a conclusion that they had in any way purposefully availed themselves of the privilege of doing business in New York and any assertion of personal jurisdiction over Defendants in New York would be inconsistent with due process principles.

## CONCLUSION

Based upon the foregoing and the accompanying Declarations, it is respectfully requested that the pending Order of the Attachment be vacated and the matter dismissed in its

16

entirety, as Plaintiff's claims do not give rise to maritime jurisdiction. Defendants further request that the Court grant such other and further relief as it deems just and proper in the premises, including an award of its legal fees and expenses, expended in contesting this wrongful attachment.

Dated: Oyster Bay, New York
      July 21, 2008

Respectfully submitted,

**CHALOS & CO., P.C.**
*Attorneys for Defendant*
YUGTRANZITSERVIS LTD. and
SILVERSTONE, S.A.

By _____
George M. Chalos (GC 8693)
123 South Street
Oyster Bay, New York  11771
Tel: (516) 714-4300
Fax: (866) 702-4577
E-mail: gmc@chaloslaw.com

17