UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
NOBLE RESOURCES S.A.,                                :
                                                     :
                          Plaintiff,                 :
                                                     :          08 CV 3876 (LAP)
        - against -                                  :          ECF CASE
                                                     :
YUGTRANZITSERVIS LTD. a.k.a.                         :
YUGTRANZIT SERVIS LIMITED,                           :
AND SILVERSTONE S.A.,                                :
                                                     :
                          Defendants.                :
-------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO VACATE THE ATTACHMENT

Plaintiff, Noble Resources S.A. ("Noble" or "Plaintiff"), by and through its undersigned

counsel, Tisdale Law Offices, LLC, respectfully submits this Memorandum of Law in

Opposition to Yugtranzitservis Ltd a.k.a. Yugtranzit Servis Limited ("YTS"), and Silverstone

S.A. ("Silverstone") (collectively "Defendants'") Motion to Vacate the Maritime Attachment

Order issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime

Claims of the Federal Rules of Civil Procedure (hereinafter "Rule B"). Because the Plaintiff has

met its burden of alleging a cognizable claim in admiralty as required under Rule B, the

Defendants' motion should be denied.

## FACTS

The facts pertaining to the instant Motion to Vacate the process of maritime attachment

and garnishment are fully set forth in the accompanying Declaration of Claurisse Campanale

Orozco dated July 22, 2008 ("Orozco Dec."). The facts stated in the Declaration are

incorporated by reference herein. In addition, this Memorandum of Law will make reference to,

and discuss as necessary the facts set forth in the Declaration.

## ARGUMENT

### I.    NOBLE HAS CARRIED ITS BURDEN OF ESTABLISHING THE VALIDITY OF THE ATTACHMENT OF THE DEFENDANTS' PROPERTY

Pursuant to Supplemental Admiralty Rule E(4)(F), a Plaintiff has the burden to come forward with sufficient evidence to show that "it has a valid prima facie admiralty claim against the defendant." *C. Transport Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D., et al.*, 07 Civ. 893 (LAP) citing *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006).

On a motion to vacate, the Court is only required to determine whether there are reasonable grounds for issuing an order of attachment and is not required to resolve the dispute between the parties. *In re Murmansk Shipping Co.*, 2001 U.S. Dist. LEXIS 25227, 2002 A.M.C. 2495 (E.D.La. 2001) (*citing Cashman Equip. Corp. v. Trans Carribean Trans. Co., Ltd.*, 1996 U.S. Dist. LEXIS 16307, 1996 WL 626294, *2 (E.D.La. 1996)). It is well established that "an order of maritime attachment is available where the plaintiff has an in personam claim against the defendant that is cognizable in admiralty, the defendant cannot be found in the district, property of the defendant can be found in the district, and there is no statutory or general maritime law prohibition to the attachment." *Tramp Oil & Marine Limited v. Ocean Navigation (Hellas)*, 2004 U.S. Dist LEXIS 7974 (S.D.N.Y. May 7, 2004) *citing* 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 21-2, at 470 (2d ed. 1994).

In this case, Noble's claim is cognizable in admiralty. There is no dispute that the Defendants' cannot be found within the district and that there is no statutory or general maritime law prohibition to the attachment.

## II.    THE DISPUTE BETWEEN THE PARTIES FALLS WITHIN THIS COURT'S ADMIRALTY AND MARITIME JURISDICTION

The Defendants do not dispute that "[a]dmiralty jurisdiction extends only to wholly maritime contracts or severable maritime portions of mixed contracts." *Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273, (2d Cir. 2000); *see also Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 199 (2d Cir. 1992), but simply allege that this contract is neither wholly maritime in nature, nor fits within the mixed contract doctrine that supports maritime jurisdiction when "the claim arises from a breach of the maritime provisions that are severable from the non-maritime provisions of the contract." Defendants' Brief at 5.

The dispute herein however, does in fact specifically involve the breach by the Defendants of the maritime portions of the contract between Noble and YTS, thus providing this Court with admiralty jurisdiction over Noble's claims. *See Orozco Dec. at ¶¶5-7 and ¶¶35-37.* The Defendants' assertions to the contrary mischaracterize the scope of this Court's jurisdiction in an attempt to nullify the integral maritime portion of the contract between the parties.

"In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping." 1-XII *Benedict on Admiralty* § 182 (2005). Where "the subject matter of the contract relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment it is fairly said to constitute a maritime contract." *Ingersoll Milling Mach. Co. v. M/V BODENA,* 829 F.2d 293, 302 (2d Cir. 1987).

The Supreme Court has recognized that "the boundaries of admiralty jurisdiction over contracts – as opposed to torts or crimes – being conceptual rather than spatial, have always been

3

difficult to draw." *Kossick v. United Fruit Co.,* 365 U.S. 731, 735 (1961).  In general, courts

"focus the jurisdictional inquiry upon whether the nature of the transaction was maritime."

*Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, 611 (1991).  In doing so, courts look for

something with a "genuinely salty flavor." *Kossick,* 365 U.S. at 742.

In *Norfolk Southern Ry. Co. v. Kirby,* 543 U.S. 14 (2004), the United States Supreme

Court recently clarified the test for determining whether a contract is maritime.  In *Kirby,* the

Supreme Court held that a contract is maritime when a primary objective of the parties' contract

is to accomplish the transportation of goods by sea, even where there are non-maritime

components to the contract.  *Id.* at 24; *see generally Folksamerica Reinsurance Co. v. Clean

Water of New York, Inc.,* 413 F.3d 307 (2d Cir. 2005)(explaining *Kirby*).   In reaching this

conclusion, the Court implemented a conceptual approach to contracts involving maritime and

non-maritime elements and directed that the jurisdictional inquiry be focused "upon whether the

nature of the transaction was maritime." *Id. (citing Exxon Corp. v. Central Gulf Lines, Inc.,* 500

U.S. 603, 608 (1991)).  The Court observed that "the fundamental interest giving rise to maritime

jurisdiction is the protection of maritime commerce."  *Id.* at 25 (*citing Exxon,* 500 U.S. at 608;

*Sisson v. Ruby,* 497 U.S. 358, 367 (1990) and *Foremost Ins. Co. v. Richardson,* 457 U.S. 668,

674 (1982)).

Furthermore, "courts should look to the subject matter of the [relevant] contract and

determine whether the services performed under the contract are maritime in nature." *Exxon

Corp.,* 500 U.S. at 612.  Under the relevant contract in this case, there is no denying that

maritime transportation was integral to the agreement between the parties: the contract provided

that Noble would purchase a cargo from YTS and expressly detailed the conditions for the

transportation and delivery, which included the nomination by Noble and approval by YTS of

4

the Vessel that would carry the cargo. *See Orozco Dec. at ¶¶5-12 and ¶¶15-16.* More importantly, the breaches that are alleged by Noble in its Rule B application, relate specifically to the maritime portions of the contract. Noble is seeking security for losses suffered as a result of YTS's failure to load the Vessel after its nomination was approved. Additional damages were sought for wasted vessel expense including bunkering costs, port and survey costs and hire payments. These losses were put forth in Noble's arbitration submission and were the only damages that were sought in the arbitration. *See Noble's Arbitration Submission, attached as Exhibit 5 to Orozco Dec.*

On July 4, 2008, an arbitration award was issued. Plaintiff was awarded damages that relate to the solely maritime portions of the contract. *See Orozco Dec. At ¶¶35-38; see also Award, attached as Exhibit 4 to Orozco Dec.* The maritime nature of the contract between the parties is highlighted in the Award issued in favor of Noble. *See Award, attached as Exhibit 4 to to Orozco Dec.* The maritime transportation of the goods was "essential to accomplishing the contract's purpose," and the contract, in fact, was breached by YTS because the voyage did not take place. *See Award at ¶¶5.6 and 6.3, attached as Exhibit 4 to Orozco Dec.*

As outlined by the Second Circuit in *Folksamerica, supra,* courts are required to "make a 'threshold inquiry' into the subject matter of the *dispute* [and] '[b]efore attempting to categorize contractual rights as maritime or non-maritime, a federal court must first consider whether an issue related to maritime interests has been raised.'" *Folksamerica,* 413 F.3d at 312, (*quoting Atlantic Mutual,* 968 F.2d at 199) (internal citations omitted). In this case, it is clear that the subject matter of the *dispute* directly relates to maritime interests. The Rule B application was filed for Noble to obtain security in aid of its then-pending arbitration in London. The arbitration submission by Noble sought damages for default and wasted vessel costs. As already stated, the

default damages were sought because YTS failed to provide a cargo and failed to load the SOUTHGATE, the Vessel nominated by Noble and accepted by YTS to perform the voyage. *See Award at ¶¶5.6 and 6.3 attached as Exhibit 4 to Orozco Dec.*

The relevant portions of the Noble/YTS contract which were the focus of the Award and for which the Plaintiff is seeking security, give rise to admiralty jurisdiction. In *Compagnie Francaise de Navigation a Vapeur v. Bonnasse*, 19 F.2d 777, 779 (2d Cir. 1927), Judge Hand held that where the maritime obligations of a contract can be "separately adjudicated, there is no objection to the jurisdiction of the admiralty pro tanto. . . . The substantial question is whether the maritime obligations can be separately enforced without prejudice to the rest." *See also Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK) Ltd.*, 230 F.3d 549, 555 (2d Cir. 2000) ("a federal court can exercise admiralty jurisdiction over a 'mixed' contract if: (1) the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract. . . .").

In this case, the subject matter of the dispute - seeking security for a now completed arbitration for losses related to the Vessel - clearly implicates the business of maritime commerce. In the Award, with respect to losses for YTS's default of the contract, the arbitrators held that "when the Sellers failed to provide a load berth, or load the vessel, by 10th August, the Buyers had no reason to believe that the Sellers would perform the Contract thereafter. *See Award at ¶5.6 attached as Exhibit 4 to Orozco Dec.* With respect to the losses for wasted vessel costs, the arbitrators found that:

> Clearly, FOB sellers know that buyers need to make shipping arrangements for the cargo so that good delivery can be effected. Therefore, it is within the reasonable contemplation of a seller that if they default, the buyers will be left with costs associated to the shipping of the cargo: see Hadley v. Baxendale, 9 Exch. 341, 156 Engl. Rep. 145 (1854). It therefore follows that the Sellers are liable for damages associated to the SOUTHGATE charter.

6

*See Award at ¶6.3 attached as Exhibit 4 to Orozco Dec.*

The delivery of the cargo required a significant ocean voyage and was integral to the completion of the parties' maritime obligations under the contract. Under these circumstances, Noble has demonstrated that the subject matter of the dispute is not so attenuated from the business of maritime commerce that admiralty jurisdiction should be denied.

In their Motion to Vacate, the Defendants attempt to analogize the instant case to several other cases where contracts therein were held to be non-maritime. Those cases are distinguishable.

- o In *Shanghai Sinom v. Exfin*, 2006 AMC 2950 (S.D.N.Y. 2006) "the alleged breach here was a breach wholly of the sale of goods provisions of the contract, not of its incidental maritime aspects, or indeed, of any transportation aspect at all." *Id.* at 2952.
- o In *Lucky-Goldstar, Int'l (America) Inc. v. Phibro Energy Int'l Ltd., 958 F.2d 58 (5th Cir. 1992)*, a pre-*Kirby* decision, in finding that the contract was non-maritime, the Court stated that "[a] principal purpose of the contract was the land-based sale of over a thousand metric tons of toluene."
- o In *Luckenbach S.S. Co. v. Central Argentine Co., 298 F. 344 (S.D.N.Y. 1924)*, another pre-*Kirby* case, the issue was whether a third party could be impleaded into a pending action that was not maritime in nature.
- o In *Aston Agro-Industrial AG v. Star Grain Ltd., 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y.)* Judge Daniels found that the contract between Agro and Star Grain was not maritime because Star Grain's liability to Aston in that case had nothing to do with any maritime obligations of the wheat contract.

In the contract at issue, YTS was in default because it failed to provide a load berth for the Vessel and failed to load the Vessel. Further damages were incurred when the Vessel sat idle until alternate employment was arranged. The damages suffered by Noble are directly related to

costs incurred in re-chartering the Vessel and costs incurred in wasted vessel expense, including extra bunkers, port charges and survey costs, all of which, as stated by the arbitrators, were completely foreseeable by YTS. *See Award at ¶¶ 5.6 and 6.3 attached as Exhibit 3 to Orozco Dec.*

Based on the foregoing, the subject matter of the dispute before this Court falls within its admiralty jurisdiction. Defendants' motion to vacate must fail.

### III.    THE PERFORMANCE GUARANTEE IS A MARITIME CONTRACT

The Defendants argue that the Silverstone guarantee does not confer maritime jurisdiction because "agreements to guarantee liabilities are not within the definition of maritime contracts and otherwise outside the threshold of 'maritime claims.'" Defendants' Brief at 8. However, Silverstone was the **guarantor** of the YSL's **performance** of its contract with Noble. As stated in the Guarantee, Silverstone, as guarantor "irrevocably and unconditionally: (a) as principal obligor guarantees to the Buyers the prompt performance by the Yugtranzit Servis Limited of all its obligations under the Contract." *See Guarantee, attached to Orozco Dec. as Exhibit 3.* Unlike an agreement to act as a surety, a guarantee of performance of a maritime contract is an obligation enforceable in admiralty. *See e.g., Japan Line, Ltd. v. Willco Oil Ltd., et. al.,* 424 F. Supp. 1092 (D. Conn. 1976); *see also Compagnie Francaise de Navigation v. Bonnasse,* 19 F.2d 777 (2d Cir. 1927) (a "promise... to assume the performance of the bond, to become the principal obligor, to do the very act promised ...to substitute the promisor's performance for the promisee's" is a guarantee within admiralty jurisdiction).

More recently, Your Honor has followed the above line of reasoning in holding that "[w]hile courts in this Circuit and elsewhere have long held that an agreement to act as a surety

on a maritime contract is not maritime in nature, they have recognized that the same is not true of an agreement to guarantee the performance of a maritime contract." *C. Transport Panamax, Ltd v. Kremikovtzi Trade E.O.O.D. et al.,* 07 Civ. 0893, at 5 (holding that the performance guarantee of a settlement agreement with "maritime contract provisions" falls within the courts admiralty jurisdiction, *id.* at 7).   The Honorable John F. Keenan has also recognized and followed this important distinction finding that "a guarantee of full performance of a maritime contract is therefore an obligation enforceable in admiralty." *Mercator Line, Inc. v. Witte Chase Corp.,* 1990 U.S. Dist. LEXIS 4425, \*9 (S.D.N.Y. 1990) (performance guarantee under charter within court's admiralty jurisdiction despite the fact that the performance guarantee was an oral contract); *see also, Interpool Limited v. Arabian Express Line Ltd.,* 2001 U.S. Dist. LEXIS 8205 (S.D.N.Y. 2001); *and see Eagle Transport Ltd. v. O'Connor, et. al.,* 449 F. Supp. 58 (S.D.N.Y. 1978).

Based on the above, the Plaintiff has met its burden of demonstrating that the guarantee provided by Silverstone is a maritime matter and that maintaining jurisdiction would protect maritime commerce.  Furthermore, the Plaintiff has established that the subject matter of this dispute is not so attenuated from the business of maritime commerce that admiralty jurisdiction should be denied. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 200 (2d Cir. 1992)("a federal court must initially determine whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction." *Id.*).  Following the Second Circuit's reasoning in *Compagnie Francaise de Navigation, supra,* as more recently confirmed by the courts in *Eagle Transport, Japan Line, Mercator Line, Interpool* and *C Transport Panamax, supra,* a

9

guarantee for performance of the underlying contract is a maritime contract. The performance guarantee between YTS and Silverstone is such a case.

Defendants argument that the claims arising out of the guarantee are not ripe and that the attachment against Silverstone should be vacated, relying on *Tamman v. Schinazi*, 2004 U.S.Dist. LEXIS 13896 (S.D.N.Y. July 21, 2004) is misplaced. See Defendant's Brief, Point IV at 9-10. *Tamman* concerned a dispute over a promissory note, and the cases cited therein involve the obligations of a surety, not one who guarantees *the performance* of the other. Furthermore, breach of that performance obligation has been established by way of the arbitration award wherein the Panel found in favor of the Plaintiff. In this case, the arguments concerning the "ripeness" of the Plaintiff's claims against Silverstone are unavailing.

## IV.    NEW YORK LAW IS NOT APPLICABLE

Defendants' final argument is that this Court does not have jurisdiction in this case because property of the Defendants' is not within this District and therefore this Court does not have jurisdiction over the Defendants, citing New York State law. The Defendant misinterprets the principals of Rule B. As this circuit has consistently recognized:

> Through attachment of a defendant's property in the district, a maritime or admiralty court gains jurisdiction over the defendant's "person," and the plaintiff can gain a judgment against the defendant up to the value of the property attached.    . . . The rule has a twofold purpose: to obtain jurisdiction over the defendant and to obtain security for any judgment awarded. Because jurisdiction over the person is gained only through the attached property, courts have recognized that Rule B jurisdiction properly is characterized as quasi in rem.
>
> To be entitled to Rule B attachment, and to establish jurisdiction over the defendant through such attachment, the plaintiff must show, first, that a claim exists against the defendant within the admiralty jurisdiction and, second that the defendant is not "found within the district." The second requirement, the lack of presence within the district, itself has two components: Rule B attachment is in appropriate if the defendant is both within the district in a jurisdictional sense and

amenable to service of process within the district. Only if the defendant is not
found within the district in either of these two senses is attachment appropriate.

See *Limonium Maritime, S.A., v. Mizushima Marinera, S.A.*, 961 F.Supp. 600, 610 (S.D.N.Y

1997) (Chin, J.), *aff'd* 1999 U.S. App. LEXIS 30447 (2d Cir. 1999). (internal citations omitted).

If the Court decides in favor of the Defendants concerning the maritime nature of the

contract or the guarantee, then the Court lacks subject matter jurisdiction over this action and it

should be dismissed. Whether or not there is personal jurisdiction would not be relevant.

Luckily for the Plaintiff, however, it is a maritime dispute and the Defendants have

conceded that they are not "found within the District" by alleging that the Court lacks *in*

*personam* jurisdiction over them. Luckily for the Plaintiff, Silverstone has property here in the

form of electronic funds transfers which have been attached. They are, thus, subject to the

personal jurisdiction of this Court.

In so far as YTS attempts to separate itself and move for dismissal, the Plaintiffs are

entitled to continue to serve process as against them alone. As the principal contracting party,

security from YTS eliminates any question about the validity of enforceability of the guarantee

from Silverstone.[1]

---

[1] For every dollar of YTS's funds that become attached, Plaintff would release the equal amount of Silverstone
funds.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, it is respectfully requested that this Court

deny Defendants' motion to vacate the attachment.

Dated: New York, NY
      July 22, 2006

The Plaintiff,
NOBLE RESOURCES S.A.,

By: _____
Claurisse Campanale Orozco (CC8581)
Lauren C. Davies (LD 1980)
TISDALE LAW OFFICES, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 – phone
(212) 869-0067 – fax
corozco@tisdale-law.com
ldavies@tisdale-law.com

TO:    George Chalos, Esq. (via e-mail, gmc@chaloslaw.com)
      *Attorneys for Defendants*