UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NOBLE RESOURCES, S.A.

              *Plaintiff,*                                08 Civ. 3876 (LAP)

   - against -

YUGTRANZITSERVIS LTD.,
a.k.a.YUGTRANZIT SERVIS LIMITED, and
SILVERSTONE, S.A.,

              *Defendants.*
------------------------------------------------------------X

## DEFENDANTS' MOTION FOR RECONSIDERATION OF YOUR HONOR'S DENIAL OF THEIR MOTION TO VACATE THE ATTACHMENT AND/OR THEIR REQUEST TO CERTIFY MATTER FOR SECOND CIRCUIT REVIEW

**COME NOW,** Defendants, Yugtranzitservis Ltd. ("YUGTRANZITSERVIS") and Silverstone, S.A. ("SILVERSTONE"), by and through undersigned counsel, who respectfully submits this request for reconsideration pursuant to Local Rule 6.3, and for the reasons more fully set forth below, asks this Honorable Court to reconsider its prior denial of their motion to vacate and/or their request, to issue an Order granting same, or in the alternative, to certify the matter for interlocutory Second Circuit review.

### RELEVANT PROCEDURAL HISTORY[1]

Following the parties exchange of briefs concerning Defendants' motion to vacate and dismiss, oral argument was held before the Court on Wednesday, July 23, 2008, at 9:00 a.m. After hearing argument from counsel for both sides, the Court Reporter set up her equipment and Your Honor issued an immediate ruling from the bench denying

---

[1] The prior procedural history of the case is more fully set forth in the Affidavit of George M. Chalos previously submitted in connection with the Defendants' motion to vacate and, for the sake of brevity, are incorporated by reference and will not be repeated herein.

1

Defendants' application, as well as denying Defendants' request to certify the matter for Second Circuit review pursuant to 28 USC 1292(b).[2]

Although there is no transcript of the arguments presented by counsel, a true and complete copy of the transcript of Your Honor's July 23, 2008 ruling is attached hereto as Exhibit "A."

## LEGAL STANDARD FOR MOTION FOR RECONSIDERATION

The standard for granting a motion for reconsideration is well settled. "A motion for reconsideration is governed by U.S. Dist. Ct., S.D.N.Y., Civ. R. 6.3 and is appropriate where a court overlooks controlling decisions or factual matters that were put before it on the underlying motion and which, had they been considered, might have reasonably altered the result before the court. Alternatively, a motion for reconsideration may be granted to correct a clear error or prevent manifest injustice." Allied Maritime, Inc. v. Rice Corp., 361 F. Supp. 2d 148 (S.D.N.Y. 2004).

In Seatrek Trans Pte Ltd. v. Regalindo Resources Pte Ltd., 2008 U.S. Dist. LEXIS 35910 (S.D.N.Y. 2008), Your Honor laid out the standard for granting a motion for reconsideration as follows: "The district court has wide discretion in determining whether to grant a motion for reconsideration. Baker v. Dorman, 239 F. 3d 415, 427 (2d Cir. 2000). Such a motion may be granted if the moving party demonstrated 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' Catskill Dev., L.L.C. v. Park Place Entm't Corp., 154 F. Supp.2d 696, 701 (S.D.N.Y. 2001) (quoting Doe v. N.Y. City Dep't Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983)).

---

[2] As of the time of this writing, there is no order or other written confirmation of the Court's decision available on either the Court's docket or through the USDC-SDNY's ECF system.

As for the standard to certify the matter for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), such certification may be granted when the order in question 'involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation…' See 28 U.S.C. § 1292(b).

For the reasons more fully set forth below, Defendants respectfully submit that the Court has made a clear error in denying their motion to vacate and dismiss and, accordingly, request Your Honor to reconsider the underlying motion in order to correct a clear error and to prevent manifest injustice. Alternatively, Defendants respectfully submit that there is an outstanding question involving controlling law for which the Court's July 23rd ruling creates a substantial ground for difference of opinion and that an immediate appeal will materially advance the ultimate termination of the litigation.

## RECONSIDERATION IS NECESSARY TO CORRECT A CLEAR ERROR AND TO PREVENT MANIFEST INJUSTICE

It is undisputed that admiralty jurisdiction is provided for under 28 U.S.C. § 1333(1), which affords district courts original jurisdiction over "any civil case of admiralty or maritime jurisdiction." Absent such requisite admiralty or maritime jurisdiction, a Rule B attachment is void. Sea Transport Contractors, Ltd. v. Industries Chemique De Senegal, 411 F. Supp. 2d 386, 392 (S.D.N.Y. 2006); see also Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 236, 268 (2d. Cir. 2002). This jurisdictional granted extends to contracts "which relate to the navigation, business or commerce of the sea. Sirius Ins. Co. Ltd. v. Collins, 16 F.3d 34, 36 (2d Cir. 1994).

While the courts have found the boundaries of admiralty jurisdiction over contracts difficult to draw, the United States Supreme Court held in Norfolk Southern Railway Co v.

3

James N. Kirby, Pty. Ltd., 543 U.S. 14, 21-22 (2004) that the ultimate determination of whether admiralty contract jurisdiction is to be conferred turns on "whether the principal objective of a contract is maritime commerce." *Id. See also* Folksamerica Reinsurance Company v. Clean Water of New York, Inc., 413 F. 3d 307, 315 (2d. Cir. 2005). It has long been held that "the general rule is that admiralty jurisdiction arises only when the subject-matter of the contract is 'purely' or 'wholly maritime' in nature. Transatlantic Marine Claims Agency Inc. v. Ace Shipping Corp., 109 F.3d 105, 109 (2d Cir. 1997). It is also common ground that there are two (2) exceptions to this general rule.

The first exception provides that admiralty jurisdiction can be exercised "where non-maritime elements of a contract are 'merely incidental" to the maritime ones.' Folksamerica, at 314. The second exception concerns "mixed" contracts, i.e. – a contract that contains both admiralty and non-admiralty obligations. If there is a mixed contract, admiralty jurisdiction can only be found if the claim arises from the breach of the maritime provisions that are severable from the non-maritime provisions of the contract. *Id.* Notwithstanding this second exception, a mixed contract is usually not within admiralty jurisdiction. Maritima Petroleo e Engenharia Ltda. V. Ocear Rig 1A, 78 F. Supp. 2d 162, 170 (S.D.N.Y. 1999).

As Defendants have previously argued both in their written submission and at oral argument, the GAFTA sale and purchase contract at issue fails to fall within either exception and that the express terms and conditions of the parties agreement did not provide for any severable maritime obligations. *See* Defendants Memorandum of Law at pps 4-8.

While Defendants acknowledge they are not permitted to re-argue their prior arguments in this application (and will not do so), Defendants respectfully submit that the Court clearly erred, *as a matter of law,* by failing to follow and apply the threshold

inquiry the aforementioned case law mandates to be employed under the circumstances. Specifically, the Court failed to analyze whether the <u>principal objective</u> of the contract was maritime commerce, which it clearly was not. Rather, in denying Defendants motion, Your Honor found:

> "As the Court of Appeals acknowledged in *Folksamerica Reinsurance Co.* (citation omitted) . . the court directed that the jurisdictional inquiry be focused upon whether the nature of the transaction was maritime and observed that the fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce.
> Here, <u>the contract itself makes clear that maritime transportation was integral to the agreement</u>. For example, the contract provided that Plaintiff Noble would purchase a cargo from YTS and the contract set out in great detail the conditions for transportation and delivery. (emphasis added).

Whether or not maritime transportation was "integral" to the agreement completely misses the point and applicable law and, as such, Defendants respectfully submit the Court's finding is clearly erroneous *as a matter of law*. The threshold inquiry should have been whether the <u>*principal objective*</u> of the contract was maritime, which it clearly was not. Then, assuming the Court would have properly applied the applicable legal standard and found that the principal objective of the contract was not maritime, the next level of inquiry should have been whether it falls within one of the two established exceptions, which Defendants submit it does not.

Additionally, the Court further compounded the error when it looked to the nature of the damages awarded by the Tribunal in the underlying GAFTA arbitration in order to support the finding of maritime jurisdiction. Specifically, Your Honor stated:

> In addition, <u>the dispute between the parties also touches upon the maritime commerce</u>. As set out in Plaintiff's claim submissions in the arbitration, and perhaps more importantly in the award, the dispute centered on two issues. First, the

5

> *default by YTS in failing to provide a berth for a vessel after she had tendered her notice of readiness and refusal to load the vessel constituting a default under the contract. And, secondly, a request for wasted vessel costs, that is, the costs incurred by the vessel following tendering of her notice of readiness.*
>
> *As set out in the award, damages were awarded for both these items and indeed there was a lengthy discussion in section 6 of the award about the wasted costs incurred on account of the vessel's lack of use because of defendant YTS's default. The wasted vessel expenses included bunkering costs, port and survey costs, and hire payments, all clearly within the maritime jurisdiction.*
>
> *For all those reasons, I find that the contract and dispute at issue fall within the Court's maritime jurisdiction.*

Here, Defendants respectfully submit that the foreign arbitration Tribunal's decision to award consequential damages to Plaintiff for costs and expenses Plaintiff incurred under a separate, maritime contract with a third-party is insufficient, *as a matter of law*, to change the nature and substance of principal objective of the sale and purchase contract to a maritime contract and/or to change any of the parties contractual obligations to fit one (1) of the two (2) established exceptions to the general rule. Notably, even counsel for Plaintiff acknowledged during the course of the July 23rd hearing that the applicable law requires this Court to look to the <u>subject matter of the contract</u> and not to the nature of the damages awarded by the foreign Tribunal. Specifically, Plaintiff's counsel confirmed to the Court:

> *The key to the quotes by defendant from the Aston Agro case is the first line where it says, "In this case." and further on in the quote Judge Daniels says that based on the facts of that particular case they are not within the maritime jurisdiction. <u>I would just like to point out that the Exxon case, 500 U.S. 603,612 reminds us - - this is the U.S. Supreme Court – reminds us that the **Courts are required to look to the subject matter of the relevant contract**</u>. (emphasis added).*

*See* Tr. At p. 11.

It has long been held that a non-maritime sale and purchase contract does not become maritime merely because the purchaser entered into a third-party maritime contract and is awarded damages under same as a result of the seller's breach. In addition to the <u>Aston Agro</u>[3] case decided by Judge Daniels, there is significant support for the position set forth by Defendants.

In <u>French Republic v. Fahey</u>, 278 F. 947 (D.C. Md. 1922), the French Republic entered into a contract with the defendant for the purchase of a quantity of rye. The French Republic entered into a separate charter party containing a demurrage clause with a vessel which was to receive delivery of the grain in Baltimore. Upon presentation of the vessel in Baltimore, the defendant sellers were late in delivering the grain as a consequence of which the buyer became liable to the third-party vessel owner for demurrage. The defendant seller denied liability for the demurrage and asserted that there was no admiralty jurisdiction in the action as "they were merely sellers of merchandise, and there was nothing maritime about the bargain they made. The circumstances that the buyer wanted the grain transported by water did not alter the essential nature of the agreement." <u>Id.</u> at 948. The court agreed, finding that, as the sellers never made any agreement with the vessel "an original non-maritime contract of purchase and sale does not become maritime merely because the buyer may be entitled to recover from the seller a sum which it had to pay because of the default of the sellers in their non-maritime undertaking causing it, in turn, to break a maritime engagement." <u>Id.</u> at 949.

Similarly, in <u>Woodcraft Works, Ltd. v. United States,</u> 139 Ct.Cl. 149, 152 F. Supp. 82 (United States Court of Claims, 1957), the plaintiff entered into a contract with the defendant to sell lumber, which was to be delivered to Okinawa. Plaintiff apparently entered into a charter party for a vessel. Plaintiff's obligation to defendant was to deliver the lumber

---

[3] Defendants respectfully submit that upon reconsideration the Court should find Judge Daniels' decision in the <u>Aston Agro</u> matter to be directly on point and should be followed.

on board the vessel, with instructions to deliver it as directed and pre-pay the freight. After this had been done, there was a delay in unloading the vessel at its destination, which Plaintiff was liable to pay under the charter party. The plaintiff contended that since the delays were the fault of the defendant, the defendant was obligated to pay for such damages. The defendant moved to strike the action on the ground that there was no admiralty jurisdiction. The court agreed, finding that "an action by the owner of the vessel would be maritime, but not an action by the shipper against the consignee. The liability of the consignee to the plaintiff only arises because of the contract of sale of the lumber, and that, of course, is not a maritime contract. Its liability to plaintiff for demurrage was incidental to the contract of sale and grows out of it. Plaintiff's action here is founded upon the contract of sale, and is not a maritime cause of action." *Id.* at 83.

　　Here, the underlying dispute was a simple claim by a buyer of Russian milling wheat against the seller. Pursuant to the parties' agreement, the dispute was referred to arbitration in accordance with the standard arbitration clause contained in the Grain and Feed Trade Association form contract. The fact that the Tribunal found that YTS responsible for Plaintiff's consequential maritime losses arising from YTS' breach does not transform the original, non-maritime sale and purchase contract or otherwise give rise to maritime jurisdiction over the claim.

　　Accordingly, Defendants respectfully submit that the Court clearly erred in finding that the claim falls within the Court's maritime jurisdiction and respectfully requests that the Court reconsider its prior ruling to correct a clear error and prevent a manifest injustice to Defendants.

### THE COURT'S DENIAL OF DEFENDANTS MOTION TO VACATE STANDS ALONE AND IN STARK CONTRAST TO THE AVAILABLE CASE LAW PRECEDENT, WHICH CREATES A QUESTION OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION. ALSO, AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION

In concluding the July 23rd hearing, understand counsel asked the Court to certify the matter for interlocutory appeal. Specifically, the following exchanged occurred:

> *MR. CHALOS: . . . Finally, Your Honor, we would like to ask the Court to certify this matter for immediate appeal to the Second Circuit.*
>
> *THE COURT: I will take a letter on that.*

*See*, Tr. At p. 9.

However, after a bit more discussion, Your Honor denied the request stating:

> *The Court denies the request for certification under 28 U.S.C. Section 1292(b). The controlling law is not at all at issue in this case. Everyone agrees on the cases that should be looked to for guidance. The only dispute is the application of those cases to the facts of this case as opposed to the facts of other cases. Accordingly certification for immediate appeal is denied.*

*See*, Tr. At p. 12.

Here, Defendants respectfully submit that there is a significant question of controlling law at issue for which there may be a substantial ground for difference of opinion. The Court's finding that the claim properly falls within the Court's admiralty jurisdiction because "the underlying contract certainly touched upon the business of maritime commerce" and that the subsequent dispute "touches upon the maritime commerce" is in error; stands alone amongst many similar prior decisions and more recent Rule B decisions; and is not in accordance with the governing legal standard to be

9

applied in determining whether the matter properly falls within the Court's admiralty jurisdiction. There is a significant outstanding legal question as to the controlling threshold inquiry this Court should have applied. Moreover, certifying this matter for interlocutory appeal will materially advance the ultimate termination of the litigation.

## CONCLUSION

For the reasons more fully set forth above, Defendants respectfully request that the Court reconsider its prior denial of Defendants' motion to vacate and issue an order granting same, or in the alternative, certify the matter for interlocutory appeal pursuant to 28 USD 1292(b) as the matter involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order will materially advance the ultimate termination of the litigation.

Dated: Oyster Bay, New York
      August 4, 2008

Respectfully submitted,

**CHALOS & CO., P.C.**
*Attorneys for Defendants*
YUGTRANZITSERVIS LTD. and
SILVERSTONE, S.A.

By _____
George M. Chalos (GC 8693)
123 South Street
Oyster Bay, New York 11771
Tel: (516) 714-4300
Fax: (866) 702-4577
E-mail: gmc@chaloslaw.com

10

# EXHIBIT "A"

```
                              87N6NOBC
                                                                         1
     87N6NOBL
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   NOBLE RESOURCES,
 3
 4              Plaintiff,
 4
 5        v.                              08 CV 3876(LAP)
 5
 6   YUGTRANZITSERVIS and
 6   SILVERSTONE,
 7
 7              Defendants.
 8
 8   ------------------------------x
 9                                        New York, N.Y.
 9                                        July 23, 2008
10                                        9:45 a.m.
10
11   Before:
11
12                   HON. LORETTA A. PRESKA,
12
13                                        District Judge
13
14                       APPEARANCES
14
15   TISDALE LAW OFFICES, LLC
15        Attorneys for Plaintiff
16   BY:  CLAURISSE OROZCO
16
17   CHALOS & CO.
17        Attorneys for Defendants
18   BY:  GEORGE M. CHALOS
18
19
20
21
22
23
24
25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

```
                                                                         2
     87N6NOBL
 1         (Case called; in open court)
 2
 3         THE COURT:  Counsel have very graciously agreed to
 4   prepare their papers quickly so that the hearing required to be
 5   conducted quickly on a motion to vacate a maritime attachment
 6   could take place promptly.  I am grateful to counsel for doing
 7   that.
 8         Defendant argues first that the contract at issue is
 9   not subject to maritime jurisdiction.  We all agree to the law
10   which is that the threshold inquiry examines the subject matter
11   of dispute as opposed to the underlying contract.  To determine
12   if an issue related to maritime interests has been raised, an
13   issue will not give rise to maritime jurisdiction if the
14   subject matter of the dispute is so attenuated from the
```

Page 1

```
                          87N6NOBC
15    business of maritime commerce that it does not implicate the
16    concerns underlying admiralty and maritime jurisdiction.
17              As the Court of Appeals acknowledged in FolksAmerica,
18    Reinsurance Co. v. Cleanwater New York, Inc., 413 F.3d 307 (2d
19    Cir. 2005) the court directed that the jurisdictional inquiry
20    be focused upon whether the nature of the transaction was
21    maritime and observed that the fundamental interest giving rise
22    to maritime jurisdiction is the protection of maritime
23    commerce.
24              Here, the contract itself makes clear that maritime
25    transportation was integral to the agreement.  For example, the
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                         3
      87N6NOBL
 1    contract provided that Plaintiff Noble would purchase a cargo
 2    from YTS and the contract set out in great detail the
 3    conditions for transportation and delivery.
 4              The contract set out in the portion under delivery the
 5    window of dates open for loading in the specified port, that
 6    portion of the contract also required that the vessel nominated
 7    by buyers was required to tender her notice of readiness at the
 8    designated port.  It set out how the loading of the vessel was
 9    to be effected.  It set out in great detail the type of vessel
10    that would be acceptable, that is, "A self-trimming bulk
11    carrier, single-decker vessel suitable for direct loading
12    (wagon-board of the vessel)."
13              The Contract also provided that the vessel could be --
14    should be confirmed or rejected by sellers in writing and, in
15    fact, here the sellers rejected the first three vessels that
16    were nominated eventually accepting the Southgate.
17              The contract further set out the preadvise that buyers
18    were to give the sellers of the vessel's ETA, name, flag,
19    dimensions, hatches and hold dimensions and alike.  It set out
20    in detail the loading instructions, the loading rate, detailed
21    the notice of readiness and the laytime and the demurrage,
22    among other provisions.  So the underlying contract certainly
23    touched upon the business of maritime commerce.
24              In addition, the dispute between the parties also
25    touches upon the maritime commerce.  As set out in plaintiff's
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                         4
      87N6NOBL
 1    claim submissions in the arbitration, and perhaps more
 2    importantly as reflected in the award, the dispute centered on
 3    two issues.  First, the default by YTS in failing to provide a
 4    berth for the vessel after she had tendered her notice of
 5    readiness and refusal to load the vessel constituting a default
 6    under the contract.  And, secondly, a request for wasted vessel
 7    costs, that is, the costs incurred by the vessel following
 8    tendering of her notice of readiness.
 9              As set out in the award damages were awarded for both
10    these items and indeed there was a lengthy discussion in
11    Section 6 of the award about the wasted costs incurred on
12    account of the vessel's lack of use because of defendant YTS's
13    default.  The wasted vessel expenses included bunkering costs,
14    port and survey costs, and hire payments, all clearly within
15    the maritime jurisdiction.
16              For all those reasons, I find that the contract and
17    dispute at issue fall within the Court's maritime jurisdiction.
18              The question has also been presented as to whether or
19    not the guarantee by Silverstone falls within the Court's
                                  Page 2
```

```
                         87N6NOBC
20   maritime jurisdiction.  As the Court has set out recently in C
21   Transport Panamax, Ltd. v. Kremikovtzi Trade, et al., 07 CR 893
22   (June 19, 2008 S.D.N.Y.) courts in this circuit and elsewhere
23   have long held that an agreement to act as a surety on a
24   maritime contract is not maritime in nature.  They have
25   recognized that the same is not true of an agreement to
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

                                                                          5

```
     87N6NOBL
 1   guarantee the performance of a maritime contract.
 2           See e.g. Compagnie Francaise, DE Navigational Avapeur
 3   v. Bonnase, 19 F.2d 777, 779 (2d Cir. 1927) (L. Hand, J).
 4           Here the guarantee by Silverstone specifically states
 5   "The guarantor (Silverstone) irrevocably and unconditionally,
 6   A, as principal obligor guarantees to the Buyers the prompt
 7   performance by (YTS) of all its obligations under the
 8   Contract...."  Accordingly, the guarantee at issue here based
 9   on longstanding Second Circuit law falls within the meaning of
10   maritime contracts.
11           Finally, with respect to defendant's argument that the
12   matter is not ripe, the arbitral award has ordered that the
13   payment be made and it has not yet been paid.  Accordingly, the
14   matter is ripe with respect to the guarantor.  In addition, it
15   is most frequently the case that Rule B attachments are used to
16   provide security for arbitral awards and that has been the use
17   here.  Accordingly, defendants' motion to vacate the attachment
18   is denied.
19           THE COURT:  Is there anything else today?
20           MR. CHALOS:  Yes, your Honor, two points if I may.
21           THE COURT:  Sir.
22           MR. CHALOS:  We thank the Court for hearing us on an
23   expedited basis.  We would first off like to make an
24   application to the Court to reduce the amount of security.  On
25   page 14 of the award, the panel clearly sets forth that the
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

                                                                          6

```
     87N6NOBL
 1   plaintiff was awarded $3,362,400 and no more as the words of
 2   the panel.  Here the amount of the order attachment is almost
 3   double that.  It is significantly more.
 4           THE COURT:  What is the story with the interest,
 5   Mr. Chalos?
 6           MR. CHALOS:  According to the panel, it is 7.5 percent
 7   beginning August 16, 2007.  That is only one year's worth of
 8   interest.  Surely this can be resolved in the next, I would
 9   assume, six months or so with the upcoming appellate deadlines.
10           THE COURT:  Has anyone done the calculation of the
11   interest?
12           MS. OROZCO:  I have, your Honor.  But I would just
13   like to speak on that point.  The panel awards the amount less
14   than we had sought in our application, but it also awards
15   interest 7.5 percent from the date of the default until it is
16   paid and it also awards costs of arbitrator, not legal costs.
17           We have attached to date as outlined in my declaration
18   $4 million.  It is paragraph 34 of my declaration at page 6.
19   We have not calculated the interest out for a year.  What we
20   have done is calculated it out for three years, which is
21   normally what we undertake in anticipating appeals and that
22   sort of thing.  If we allow for three years of interest,
23   security for three years of interest, plus the costs of the
24   Gafta arbitration, the security that we would be entitled to
                                 Page 3
```

```
                              87N6NOBC
25     would be $4,225,000.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                                 7
```
       87N6NOBL
 1                 So we are at this time undersecured by 200,000.
 2     However, if the Court wants us to reevaluate the interest, we
 3     would be willing to do so and then release the funds
 4     accordingly if that was a proper analysis.
 5                 THE COURT:  Counsel.
 6                 MR. CHALOS:  Those calculations are flawed.  Those
 7     calculations are based on the principal claim of 3.9 million.
 8     That is not what the panel awarded.  7.5 percent on the $3.3
 9     million award is about, 21 to $210,000.
10                 MS. OROZCO:  I actually calculated the three-year
11     interest on the amount awarded by the arbitrators, which was
12     $3,362,400.  And the interest from August 15th, 2007 through
13     August 15th, 2010 is $840,000.
14                 MR. CHALOS:  I submit through 2010 is a bit long.  I
15     can certainly understand maybe two years, but not three.
16                 Also, seeing as they are already secured from the
17     guarantor's EFTs, I renew my application and dismiss the matter
18     against YTS.  They are secured or they are not secured.  They
19     have it already attached.  There is no in rem quasi
20     jurisdiction over the party whose funds who haven't been
21     attached.
22                 THE COURT:  I don't hear counsel going out and seeking
23     further attachments here.
24                 MR. CHALOS:  But they would, though.  That is the
25     point if they sought to move money.  In fact, in the papers
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                                 8
```
       87N6NOBL
 1     that counsel submitted last night, they said exactly that they
 2     would do that.  If they wound up -- U.S. dollar transfers on
 3     behalf of Yugtranszitservis came through New York, they would
 4     catch that and release monies belonging to the guarantor.
 5                 THE COURT:  What do you say to that, counsel?
 6                 MS. OROZCO:  Was that was a statement that we made.
 7     That statement as made with respect to the application of the
 8     New York CPLR in that case, which we didn't address and we say
 9     we are not applied.  We actually have stopped serving the writ
10     of attachment in this case and we are no longing serving on any
11     of the defendants.
12                 THE COURT:  First, I decline to reduce the amount.
13                 Second, obviously counsel knows that plaintiff may not
14     be oversecured.  If, Mr. Chalos, you find that plaintiff is
15     attaching more than the four million two number -- is that the
16     total number?  Please remind me.
17                 MS. OROZCO:  Yes.  The total number is comprised of
18     $3,362,400 of principal pursuant to the arbitration award
19     issued on July 4th, 2008, with the rate of interest calculated
20     at 7.5 percent which is also the rate awarded for three years
21     from August 15th, 2007 through August 15th, 2010.  The interest
22     on that amount is $840,501.
23                 In addition, the arbitration award also allowed costs,
24     Gafta costs, to the plaintiff and the Gafta costs incurred were
25     23,000 U.S. dollars.  So the total security we would be
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                                 9
```
       87N6NOBL
```

Page 4

```
                            87N6NOBC
 1    entitled to or we would be seeking is $4,225,901.
 2            THE COURT:  To the extent, Mr. Chalos, counsel
 3    attaches more than that, you let me know.
 4            MR. CHALOS:  Thank you, your Honor.
 5            Finally, your Honor, we would like to ask the Court to
 6    certify this for immediate appeal to the Second Circuit.
 7            THE COURT:  I will take a letter on that.
 8            How is this a complex or novel issue?
 9            MR. CHALOS:  Well, it is a novel issue in the sense
10    that the Court has for the first time found a Gafta contract to
11    be within the meaning of a maritime contract and a maritime
12    claim under Rule B.  It stands starkly in contrast to Judge
13    Daniels' decision as to Aston Agro as well as Judge Sullivan, I
14    am not sure about that, in the Tan Shan case.  These exact
15    arguments were presented there with a 180-degree different
16    result and I do believe that if we can bring this to a head
17    Second Circuit level promptly that would help provide some
18    clarity on these types of issues.
19            THE COURT:  The law is not in doubt.  It is the
20    application, right?
21            MR. CHALOS:  Well, I think the law is in doubt in a
22    sense that our position is that the Court needs to look to the
23    primarily objective of the contract.  Our argument has been
24    that the primary objective of the contract is one of sale and
25    purchase.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

10

```
      87N6NOBL
 1            THE COURT:  I didn't see any of the Second Circuit
 2    cases talking about the primary objective of the contract.
 3            MR. CHALOS:  Well, I think we set out the argument
 4    based on the precedent of Judge Daniels' decision, which can be
 5    found for the Court's reference on page 3 of the Aston Agro
 6    decision where he writes, In this case the contracts are not
 7    maritime contracts because they are primary objective was not
 8    the transportation of goods by sea.  Instead, their primary
 9    objective was undoubtedly the sale of wheat.  That the wheat
10    was transported on a ship does not make the contracts maritime
11    contracts anymore than it would make them aviation contracts
12    had the wheat been shipped via airplane.  Nor would the
13    contracts between a seller and shipper -- that is true here.
14    the judge in that matter goes on to write, Nor can maritime
15    jurisdiction be exercised under an exception to the general
16    rule that maritime jurisdiction "Arises only when the subject
17    matter of the contract is purely or wholly maritime in nature.
18    Under the first exception, federal court can exercise --
19            THE COURT:  Counsel, do you want this taken down?  If
20    you do, you better read so the court reporter can take it down.
21            MR. CHALOS:  The Court has it before it.
22            THE COURT:  So you don't need to read it.
23            MS. OROZCO:  May I respond?
24            THE COURT:  Yes, ma'am.
25            MS. OROZCO:  The key to the quotes by defendant from
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

11

```
      87N6NOBL
 1    the Ashon Agro case is the first line where it says, "In this
 2    case." and further or in the quote Judge Daniels says that
 3    based on the facts of that particular case they are not within
 4    the maritime jurisdiction.
 5            I would just like to point out that the Exxon case,
```

Page 5

```
                                87N6NOBC
 6   500 U.S. 603, 612 reminds us -- this is the U.S. Supreme
 7   Court -- reminds us that courts are required to look to the
 8   subject matter of the relevant contract. And in this case the
 9   relevant contract, the Noble YTS contract, provides maritime
10   jurisdiction.
11            MR. CHALOS: Your Honor, this is the shifting sands
12   that I have been arguing again. The Court is required to look
13   to the nature of the contract, not the dispute. Twenty minutes
14   ago counsel was arguing the Court needs to look to the dispute
15   and I rejected that. The contract is a sale and purchase
16   contract, not a maritime contract. It is not maritime contract
17   with third parties. We had nothing do with it. My clients had
18   nothing to do with it. That is the dispute here. If you look
19   to the nature and substance of the contract, we are selling and
20   they are buying. Full stop. It is the sale and purchase
21   contract.
22            In fact, your Honor, that was precisely what was
23   addressed by Judge Daniels. He writes here invoking the first
24   exception, Aston contends that maritime jurisdiction exists
25   because the particular claims at issue involve only the
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

                                                                          12
```
     87N6NOBL
 1   maritime portions of the contracts, and it was rejected, which
 2   is precisely the argument presented by plaintiff. Our
 3   opposition is precisely the argument adopted by Judge Daniels.
 4            THE COURT: The Court denies the request for
 5   certification under 28, U.S.C., Section 1292(b). The
 6   controlling law is not at all at issue in this case. Everyone
 7   agrees on the cases that should be looked to for guidance. The
 8   only dispute is the application of those cases to the facts of
 9   this case as opposed to the facts of other cases. Accordingly
10   certification for immediate appeal is denied.
11            Anything else, counsel?
12            MR. CHALOS: Nothing further, your Honor.
13            THE COURT: Thank you, ladies and gentlemen. Thank
14   you for your excellent arguments.
15                                 oOo
16
17
18
19
20
21
22
23
24
25
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```