UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NOBLE RESOURCES, S.A.

                *Plaintiff,*                 08 Civ. 3876 (LAP)

   -  against -

YUGTRANZITSERVIS LTD.,
a.k.a.YUGTRANZIT SERVIS LIMITED, and
SILVERSTONE, S.A.,

                *Defendants.*
------------------------------------------------------------X

## DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF YOUR HONOR'S DENIAL OF DEFENDANTS' MOTION TO VACATE THE ATTACHMENT AND RENEWAL OF REQUEST TO CERTIFY MATTER FOR SECOND CIRCUIT REVIEW

**COME NOW,** Defendants, Yugtranzitservis Ltd. ("YUGTRANZITSERVIS") and Silverstone, S.A. ("SILVERSTONE"), by and through undersigned counsel, who respectfully submits this Reply to Plaintiff's opposition to Defendants' request for reconsideration.

As Plaintiff has agreed, a motion for reconsideration may be granted to correct a clear error or prevent manifest injustice. Allied Maritime, Inc. v. Rice Corp., 361 F. Supp. 2d 148 (S.D.N.Y. 2004). Additionally, such a motion for reconsideration may be granted if the moving party demonstrated 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' Catskill Dev., L.L.C. v. Park Place Entm't Corp., 154 F. Supp.2d 696, 701 (S.D.N.Y. 2001) (quoting Doe v. N.Y. City Dep't Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983)).

Moreover, the Court should certify the matter for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), as the Court's prior ruling 'involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from

1

the order may materially advance the ultimate termination of the litigation…' *See 28* U.S.C. § 1292(b).

Defendants reiterate and incorporate all of their prior arguments as to why they have requested Your Honor to reconsider the prior denial of Defendants' motion to vacate and request to certify the matter for appeal in order to correct both a clear error and to prevent a manifest injustice. Here, there is clearly a question involving the controlling law for which there is a substantial ground for difference of opinion. An immediate appeal will materially advance the ultimate termination of this litigation; an undisputed fact with which even Plaintiff has not (and cannot) take issue.

Specifically, since the time that this Court issued its ruling denying Defendants' requests, Judge Rakoff addressed a very similar matter, but rendered a ruling 100% to the contrary. *See* <u>Vrita Marine Co. Ltd. v. Sea Gulf Trading LLC, Al Qaili Group, et al.</u>, (09-cv-5614 (JSR) (S.D.N.Y.)

In <u>Vrita Marine</u>, Judge Rakoff advised that he will be granting Defendants' motion to vacate a maritime attachment on the basis that the underlying contract by and between the parties for the *sale and purchase* of a ship did not give rise to a maritime claim. In this regard, Judge Rakoff considered the fact that the breach of the contract related to the Defendants' failure to take delivery of the vessel at a pre-agreed anchorage off the coast of Bangladesh. Additionally, Judge Rakoff considered the fact that the dispute had been referred to a panel of London maritime arbitrators; in a London Maritime Arbitration Association ("LMAA") proceeding; the fact that Plaintiff had been awarded damages for indisputably maritime claim items such as crew wages, vessel costs, etc; and that the Plaintiff was seeking the court to recognize and enforce the foreign maritime arbitration award. Nevertheless, in looking to the subject matter of the contract, and disregarding both the nature of the breach and the damages awarded, the court held that the contract was not

2

maritime in nature and will vacate the attachment. For Your Honor's ready reference, a copy of the transcript of the oral argument held before Judge Rakoff on August 19, 2008, and the reasoning upon which the contrary decision will be based, is attached hereto as Exhibit "A."

Respectfully, Defendants submit that, at a minimum, the state of the controlling law and the test by which the District Court should evaluate whether a particular contract (or certain aspects of a contract) give rise to a maritime claim are confused, at best. Second Circuit review would not only advance the ultimate termination of this litigation, but also provide much needed clarity to the undisputedly emerging practice of ex parte Rule B maritime attachments.

## CONCLUSION

**WHEREFORE**, Defendants respectfully request that the Court reconsider its prior denial of Defendants' motion to vacate and issue an order granting same, or in the alternative, certify the matter for interlocutory appeal pursuant to 28 USD 1292(b) as the matter involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order will materially advance the ultimate termination of the litigation.

Dated: Oyster Bay, New York
August 22, 2008

Respectfully submitted,

**CHALOS & CO., P.C.**
*Attorneys for Defendants*
YUGTRANZITSERVIS LTD. and
SILVERSTONE, S.A.

By _____
George M. Chalos (GC 8693)
123 South Street
Oyster Bay, New York 11771
Tel: (516) 714-4300
Fax: (866) 702-4577
E-mail: gmc@chaloslaw.com

# Exhibit A

```
                    Transcript of Oral Argument (8.19.08)
                                                                              1
        88j6vria
    1   UNITED STATES DISTRICT COURT
    1   SOUTHERN DISTRICT OF NEW YORK
    2   ------------------------------x
    2
    3   VRITA MARINE COMPANY LTD.,
    3
    4              Plaintiff,
    4
    5        v.                                 08 CIV 5614(JSR)
    5
    6   SEAGULF TRADING LLC, et al.,
    6
    7              Defendants.
    7
    8   ------------------------------x
    8                                           New York, N.Y.
    9                                           August 20, 2008
    9                                           5:45 p.m.
   10
   10   Before:
   11
   11                    HON. JED S. RAKOFF,
   12
   12                                           District Judge
   13
   13                         APPEARANCES
   14
   14   CHALOS & CO., P.C.
   15        Attorneys for Plaintiff
   15   BY:  GEORGE MICHAEL CHALOS, ESQ.
   16
   16   LAW OFFICES OF RAHUL WANCHOO
   17        Attorney for Defendants
   17   BY:  RAHUL WANCHOO, ESQ.
   18
   18
   19
   20
   21
   22
   23
   24
   25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                              2
        88j6vria
    1        (Case called; in open court)
    2        THE DEPUTY CLERK:  Counsel, please state your name for
    3   the record.
    4        MR. CHAOLOS:  Good afternoon, your Honor.  For Vrita
    5   Marine Co. Ltd. I am George Chalos.
    6        THE COURT:  Good afternoon.
    7        MR. WANCHOO:  Good afternoon, your Honor.  Rahul
    8   Wanchoo for defendant Al Aqili Group companies.
    9        THE COURT:  Good afternoon.
   10        We are here on the motion to vacate or modify the
   11   attachment and to dismiss the complaint.  I think we ought to
   12   turn first to the argument that this Court lacks jurisdiction
   13   because this is not properly a claim in admiralty.  The claim
   14   arises according to the complaint, which of course I have to
```

Page 1

Transcript of Oral Argument (8.19.08)

15  take as true for purposes of this motion, from a sale of a
16  vessel back in -- or a contract for the sale of a vessel back
17  in July 1998 where plaintiff Vrita Marine entered into a
18  contract with defendant Seagulf to sale the vessel Vrita M for
19  approximately for $750,000.
20       In the end of July 1998 plaintiff duly delivered the
21  Vrita M, but according to complaint Seagulf refused to take
22  delivery and plaintiff then had to sale the Vrita M to another
23  buyer at a lower price.
24       The seeming breach was then the subject of an
25  arbitration in London that began in August of 1999 and that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

88j6vria

1   culminated in an award of plaintiff's favor some $222,484.08.
2   The plaintiff in the complaint alleges that the other
3   defendants here are all liable because all are alter egos of
4   one of the defendants Al Aqili Group, which that includes
5   Seagulf. And on its face the complaint alleges breach of
6   contract, account stated, unjust enrichment, quantum meruit,
7   and request of attachment, an attachment of over a half million
8   dollars.
9        So the first argument that the defendant makes is that
10  this doesn't qualify for admiralty jurisdiction because a claim
11  for breach of contract for the sale of a vessel does not
12  ordinarily give rise to an admiralty claim.
13       So let me hear plaintiff's counsel just on that first
14  issue.
15       MR. CHAOLOS: Thank you, your Honor. We take no issue
16  with the statement that as a matter of U.S. American law that
17  this would not be a maritime claim if it was related solely to
18  the sale and purchase of a vessel. That is not what this case
19  is about. What this case is about is an agreement between the
20  parties that in essence a sale and purchase agreement. But the
21  breach of that agreement was that the defendant's failure to
22  take delivery.
23       Under the Second Circuit guidance that we have or the
24  Supreme Court guidance in Kirby and the Second Circuit guidance
25  that we have in the Folks America case, the courts are to look

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

88j6vria

1   to the nature the dispute, not necessarily characterize the
2   contract in broadbrush terms. And here we have a breach of the
3   sale and purchase contract by way of the defendant's failing to
4   take delivery and then a subsequent arbitration, a London
5   arbitration -- actually a London maritime arbitration -- where
6   the parties came in and fought out their battle. My client was
7   awarded damages for its maritime claims. Its maritime claims
8   were for things for like unpaid running costs for the vessels
9   and repatriation of the crew and those types of things. That
10  would be purely maritime under any law. So we think it
11  certainly falls under the umbrella of a maritime claim under
12  whatever law you would like to apply.
13       The parties here expressly agreed that this contract
14  was going to be governed by English law. So substantive
15  English law and procedural English law. There is some
16  authority in the Second Circuit that says the English law is
17  vel non of the contract and that is what the Court looks to at
18  least under English law. It hasn't been disputed by the
19  defendant would be considered -- properly considered a maritime

Page 2

Transcript of Oral Argument (8.19.08)

20  claim.
21          THE COURT: Well, it reminds me a little bit of choice
22  of law type issues. I don't reach the substantive or for that
23  matter the procedural law governing the underlying claim until
24  I determine whether under federal law there is maritime
25  jurisdiction, yes?

88j6vria
1           MR. CHAOLOS: As a general proposition I agree, yes.
2           THE COURT: So that is the threshold question and that
3   is governed by federal law. If I determine there is under
4   federal law maritime jurisdiction then the claim relating to
5   the breach of contract would be governed punitively by English
6   law and much the rest of what you are arguing might be an issue
7   under English law.
8           But I guess the problem I have that however English
9   law might treat this for the law of the United States as you
10  forthrightly agree is that a breach of contract in the normal
11  situation is not the subject of maritime jurisdiction under
12  federal law even if it happens be the breach of the contract
13  for the sale of a vessel.
14          So I think the point you are raising that will, at
15  least to me is your if you will best argument, is that the
16  specific breach involved here was a failure to take the
17  delivery and the argument is that that is a different kind of
18  breach if you will giving rise to a different kind of damages
19  than, say, a failure to manufacture the boat on time or
20  something like that.
21          Let me hear from your adversary on that point and we
22  will come back to you.
23          MR. WANCHOO: Your Honor, the underlying contract laws
24  for the sale of the Vrita, which was being bought by Seagulf
25  and was going to be demolished in Chittagong, Bangladesh, so

88j6vria
1   however plaintiff might characterize the dispute it essentially
2   was a contract of purchase and sale and there was no life of
3   the vessel after that. It was unlike some of the cases which
4   held that where it involves maritime transactions or whether
5   there was in the nature of business or performance of the sea,
6   in this case there was no future for this vessel. It was going
7   to its graveyard. As such it was purely a contract to purchase
8   this and demolish it. The cases are well settled that
9   contracts for the purchase and sale of vessels do not give rise
10  to admiralty.
11          THE COURT: What was the reason given, if there was
12  one, even though it was in the end unsuccessful in the
13  arbitration, for the refusal to take delivery?
14          MR. WANCHOO: I will have to look, your Honor.
15          THE COURT: I just thought you might know.
16          MR. WANCHOO: I don't know exactly what the reasons.
17          THE COURT: The reason I raise that it seems to me if,
18  for example, one manufactured a vessel that had some obvious
19  defect and the manufacturer thereby breached the contract, a
20  dispute over that for breach of contract would not fall within
21  maritime jurisdiction.
22          I don't see why that would change that analysis if,
23  for example, the purchaser did not know the defect until the
24  boat was right there in front of them and then they said, You

Transcript of Oral Argument (8.19.08)
25  gave me a boat that is half the size I ordered, I am not going

88j6vria
1   to take delivery, I don't see why the fact that the purchaser
2   couldn't become aware of in my hypothetical of defects until
3   that point in time would make it any more or less of a breach
4   of contract case than if the purchaser had become aware of the
5   defect before the boat was even moved, in which case it clearly
6   would not be a maritime matter.
7           Does plaintiff have any information on that?
8           MR. CHAOLOS: I don't, your Honor. The only
9   information that my client was able to share with me was that
10  we brought the ship to the delivery point. We were obligated
11  to make sure that she was safely afloat and was fully
12  certificated and it was spelled out in the memorandum of
13  agreement. We had done that. Basically the buyers, if you
14  will, didn't turn up. At the time they did the best that they
15  could to mitigate their damages and look for another buyer. I
16  am not familiar with the terms of that substitute sale, but I
17  seem to recall it was not to go to the graveyard but it may
18  have been.
19          THE COURT: I guess I am concerned about your argument
20  that we have to sort of break a breach of contract claim down
21  into its more particularized form before we can decide whether
22  there is jurisdiction or not. That seems to me in many cases
23  that would become a can of worms so to speak. Supposing
24  someone brought a ship, the person took delivery but gave them
25  a back check which bounced the next day, I can't see how the

88j6vria
1   fact that the ship is delivered in those circumstances would
2   turn that breach of contract case into a maritime case. To be
3   sure there would be certain types of damages that would be more
4   traditionally maritime sounding, but they really are not. Just
5   a matter of terms that the costs for the crew can be calculated
6   equally well in a contract case or in a maritime case. There
7   is nothing special about the fact that there was such delivery.
8   The costs are the costs.
9           MR. CHAOLOS: Well, your Honor, I wish I could tell
10  you that this argument was a clever argument that I created of
11  my own thinking. However, I can't because the wounds are still
12  fresh and the scabs are just healing. I was arguing the exact
13  position that Mr. Wanchoo was arguing a few days ago in front
14  of Judge Preska and it was the sale and purchase contract for a
15  sale of grain. There is a case from Judge Daniels directly on
16  point called Aston Agro, and Judge Preska in that matter looked
17  exactly to this analysis that I am sharing with the Court today
18  and arguing to the Court today. And I also understand that
19  since that decision there have been at least one or two other
20  judges to follow that analysis under Kirby as the Supreme Court
21  guidance and Folks America case as the Second Circuit guidance.
22          THE COURT: I will tell you that think I am coming out
23  the other way; but before I make a final determination, let me
24  ask you this: Assuming I was persuaded by the arguments you
25  made before Judge Preska, do you want me, assuming I come out

88j6vria

Page 4

Transcript of Oral Argument (8.19.08)

1  now against you, do you want me to certify this for appeal?
2          MR. CHAOLOS: Yes, your Honor.
3          THE COURT: If there is a split here, we ought to get
4  it resolved.
5          MR. CHAOLOS: Yes, your Honor.
6          THE COURT: Defense counsel, are you familiar with
7  those other cases?
8          MR. WANCHOO: I am not familiar.
9          THE COURT: You weren't arguing for the plaintiff in
10 that case?
11         MR. WANCHOO: There is another issue here, your Honor.
12 I know the subject matter jurisdiction was a close point. The
13 other point is entity Seagulf was dissolved.
14         THE COURT: I don't reach that if I determine there is
15 no jurisdiction. One thing the law is reasonably clear is that
16 if you have a jurisdictional issue, you should reach that first
17 and not go on to other issues except the most unusual
18 situations.
19         Well, what I think I am going to do is I will give
20 plaintiff's counsel the opportunity to supply me with Judge
21 Preska's -- was it a written decision or oral decision?
22         MR. CHAOLOS: It was an oral decision. Actually what
23 had happened was we had filed the order to show cause on -- I
24 don't remember the exact date -- a Monday afternoon at 5:00 and
25 she called around 7:00. We were in the office and our

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

88j6vria
1  opponents were in the office and she asked us if we could do it
2  on an expedited basis and come in for oral argument at 9:00
3  a.m. on that Wednesday. She was scheduled to travel abroad for
4  her summer holiday. We did and the other side put in wonderful
5  papers and we had the argument. Our reporter was not available
6  for the argument; but when the reporter was available, she went
7  ahead and gave an oral ruling from the bench.
8          THE COURT: Because I am likely to come out against
9  you and since there is money tied up, we have to move with some
10 expedition.
11         MR. CHAOLOS: I have the transcript. I can get it to
12 the Court.
13         THE COURT: If you can get me the transcript, say, if
14 you have it then maybe you can get it by close of business
15 tomorrow.
16         MR. CHAOLOS: We can. My office is in Oyster Bay. I
17 would have someone come in or I can e-mail it to chambers.
18         THE COURT: Why don't you arrange with my law clerk to
19 e-mail it to her.
20         MR. CHAOLOS: Thank you.
21         THE COURT: I will allow defense counsel to put in the
22 just shortest of responses on two questions: One is whether it
23 should change my mind on the merits, but also on whether
24 assuming it doesn't whether it make a basis for my -- well, I
25 don't have to certify because it would be a dismissal. So you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

88j6vria
1  can seek an expedited appeal without certification because
2  there is nothing left in the case. I take this all back.
3  Certification is not an issue. So it is just a question of
4  whether there is anything in Judge Preska's opinion that would
5  change my mind.

Page 5

```
                       Transcript of Oral Argument (8.19.08)
 6              So all defense counsel would have to do is put in a
 7     very short response. And so get his e-mail so you can e-mail
 8     him and a copy. I don't want to get into an e-mail habit here,
 9     so I will ask defense counsel since he is located closer to the
10     Court to just fax me your response -- a couple pages, two,
11     three pages -- by Friday afternoon.
12              MR. WANCHOO: Yes, your Honor.
13              MR. CHAOLOS: There is another argument that we have
14     and actually is sort of a third argument. But if the Court is
15     to vacate the attachment, and we will seek an appeal, what
16     happens with the money? We would ask the Court to stay --
17              THE COURT: Now, maybe when I read what Judge Preska
18     has to say I will change my mind completely; but you should
19     assume I am leaning pretty strongly at the moment of dismissing
20     the case and vacating the attachment. So why don't we do the
21     following: E-mail the transcript.
22              How long of a transcript is it.?
23              MR. CHAOLOS: Not very many pages.
24              THE COURT: Forget about faxing everything. That will
25     make it easier. Fax me by close of business tomorrow just two
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

                                                                        12

```
       88j6vria
 1     things the transcript and whatever argument you want to make
 2     for why I should stay assuming I otherwise disposed to dismiss
 3     why I should stay vacating the attachment while you seek
 4     expedited appeal. That is what you were addressing a minute
 5     ago. Defense counsel can respond to both those things in his
 6     response on Friday.
 7              I am going to get out an order on Monday. And just so
 8     that I don't have to rewrite everything I have been saying here
 9     today, I think the order will say essentially for the reasons
10     stated from the bench, unless there is something in Judge
11     Preska's decision that changes my mind, I just want to go over
12     what I think those reasons are:
13              First, that it is well established that it is federal
14     law that governs the scope of maritime jurisdiction and thus
15     the fact that there may be English law that of governs the
16     underlying controversy is neither here nor there determining
17     the jurisdiction.
18              Second, that under federal maritime law it is well
19     established that a contract for the sale of a vessel does not
20     give rise to an admiralty claim.
21              Third, that the argument made in plaintiff's papers,
22     although not argued here today, that this is really an action
23     for enforcement for an arbitration award is not an accurate
24     characterization of the complaint. The complaint really sounds
25     like breach of contract. And in any event the arbitration was
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

                                                                        13

```
       88j6vria
 1     simply itself a way of deciding a breach of contract manner.
 2              Finally, of course there is this question of whether
 3     one could seek a recognition of an award at this time. I am
 4     not suggesting the fact that was not argued today in any way
 5     waives that argument. I am just saying I didn't find it
 6     persuasive.
 7              Finally, the argument that I thought was the only
 8     really, in my view, troubling one which was is the nature of
 9     the breach here so, if you will, sea-related that it is an
10     exception to the general rule about breach of contract and it
```

Transcript of Oral Argument (8.19.08)

11  is really in its essence more of a maritime claim and therefore
12  within the Court's jurisdiction.  I don't find that a frivolous
13  arguments at all, but in the end I think that it would be a
14  practical in the extreme to try to parse each breach of
15  contract situation involving a sale of a vessel in the way that
16  that argument suggests.
17             So for all those reasons, subject to the submissions
18  that you will send me, I will vacate the attachment and dismiss
19  the complaint.  I want to be clear that I am not doing that
20  today.  I am just giving my reasons for it so that I do not
21  have to reiterated.  I might change my mind after seeing Judge
22  Preska's decision.  Even if I don't change my mind, I may be
23  persuaded to stay the whole thing pending expedited appeal to
24  allow the attachment to continue.
25             So those are the things you will address in the

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    14
88j6vria
1   submissions that I will get tomorrow at 5:00 p.m.
2              MR. CHAOLOS:  Yes, your Honor.
3              There is one other request for relief that is pending
4   before the Court and that was our request for a default.
5              THE COURT:  I don't think if I lack jurisdiction I can
6   grant that.  I think that is dispositive even as to a default
7   judgment that you would otherwise be entitled to because if I
8   don't have jurisdiction, I don't have jurisdiction.  That is
9   why I wanted to reach this issue first because the other more
10  complicated issues that you all raised, I don't reach at all
11  and I am not supposed to reach them if I lack jurisdiction.
12             Very good.  I thank you both very much and we will see
13  what happens and I will get out the order one way or another on
14  Monday.
15                              oOo
16
17
18
19
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300